**Robert C. MANNING, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES OF the UNITED STATES of America, Defendant.**

**Civ. A. No. 91–1171–FGT.**

United States District Court,
D. Kansas.

Jan. 6, 1993.

David H.M. Gray, Hiebsch, Gragert, Hiebert, Gray & Davisson, Wichita, KS, for plaintiff.

Stephen K. Lester, Office of U.S. Atty., Wichita, KS, for defendant.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on plaintiff's motion for judgment reversing the decision of the Secretary of Health and Human Services and ordering the Secretary to pay Social Security disability benefits to the plaintiff. (Doc. 22). The defendant moves for an affirmance of the Secretary's decision. (Doc. 24).

The plaintiff was involved in an automobile accident on August 27, 1982. (Tr. 34, 54). Plaintiff was thirty-six years old at the time. (Tr. 172). Plaintiff's wife was killed in the accident, and plaintiff received multiple injuries, including facial lacerations and fractures, a head injury, broken ribs, a punctured lung, and a fracture dislo-

cation of his left hip. (Tr. 34–35). Plaintiff underwent surgery on his hip and extensive physical therapy. (Tr. 35, 194–98). Plaintiff had to use crutches to walk for several months. (Tr. 35). He thereafter used a cane until 1985. (Tr. 35). Plaintiff experienced a great deal of pain, but the pain decreased over time. (Tr. 36). At the hearing he described his pain as "just a constant dull ache" with periods of greater pain. (Tr. 36).

Plaintiff testified that he was prescribed several types of pain medication which made him a "zombie." (Tr. 56). Therefore, plaintiff chose to use alcohol to alleviate his pain instead of prescription drugs. (Tr. 56). Plaintiff is an alcoholic, but there is no evidence that plaintiff suffered alcoholism during the time of his insured status.

The administrative law judge ("ALJ") found that plaintiff had not engaged in substantial gainful activity since the accident. (Tr. 11). Plaintiff did hold a job in a friend's oil production company for a time, but he apparently did not do any substantive work. He was merely given busy work to occupy his time because he could not satisfactorily perform necessary tasks. (Tr. 73). Plaintiff would typically put in about four hours per day. (Tr. 38). Plaintiff testified that he had one or two bad days a week during which he would stay at home and try to work there. (Tr. 41).

Plaintiff testified that he began to experience severe depression immediately after the accident. (Tr. 60). He has mood swings and trouble with concentration and memory. (Tr. 60). He increasingly experiences episodes of uncontrollable anger during which he becomes mentally and physically abusive. (Tr. 62). He screams and throws things, but is unaware of his behavior. (Tr. 62). After those episodes, plaintiff is exhausted and very often falls asleep. (Tr. 62). Afterward, he has no memory of the episodes. (Tr. 62). Plaintiff cannot logically reason through problems. (Tr. 63). Plaintiff lends and gives away money without regard to his own financial needs. (Tr. 63).

Carol Harris, plaintiff's "friend, companion," testified that when she met plaintiff in 1984, he was usually depressed and was

unable to care for himself and his daughter. (Tr. 69). Ms. Harris stated that she takes care of the household chores (Tr. 69) and exercises control over the finances. (Tr. 74). She described plaintiff's periods of euphoria, during which he would be in a very good mood; at those times, plaintiff would exaggerate his accomplishments and abilities. (Tr. 70). Plaintiff's memory troubles cause him to miss appointments. (Tr. 71). Ms. Harris testified to plaintiff's episodes of violent anger and stated that they have become more frequent over the years. (Tr. 72).

Plaintiff still experiences physical limitations, including an inability to stand in one place for more than ten minutes or sit for more than forty-five minutes. (Tr. 36–37). Plaintiff cannot lift more than ten pounds on the right and cannot lift with his left hand at all from a standing position. (Tr. 59–60). Therefore, from a purely exertional standpoint, the ALJ found that plaintiff is limited to performing only sedentary work. (Tr. 12). Plaintiff also experiences nonexertional limitations, the most important of which are pain, as described above, and mental impairments.

Dr. Kerin Schell, a psychologist who treated plaintiff, testified at the administrative hearing. Dr. Schell diagnosed plaintiff as having brain damage with manic depressant symptoms and alcoholism. (Tr. 76). Dr. Schell wanted plaintiff to see a neurologist for a possible seizure disorder. (Tr. 76). However, he testified that plaintiff would not cooperate, in part because he does not understand the extent of his problems. (Tr. 76). This is common among patients with mental disorders. (Tr. 76–77). Dr. Schell testified that plaintiff's psychological condition was getting worse. (Tr. 77). Dr. Schell concluded in his report that plaintiff has been totally disabled dating back to the time of the accident. (Tr. 249).

Plaintiff was seen by other doctors who diagnosed disabling mental impairments. Dr. James Leisy, a psychiatrist, examined and treated plaintiff in the summer of 1984. (Tr. 216). It is Dr. Leisy's opinion that plaintiff was disabled by his mental condition at that time. (Tr. 216). During treatment for alcoholism in 1989, plaintiff was examined by a psychologist, Dr. Richard Moore. Dr. Moore diagnosed plaintiff as having alcoholism, as well as significant mental and emotional problems that related back to the automobile accident in 1982. (Tr. 281).

Plaintiff has an undergraduate degree and was in law school for two and a half years. (Tr. 34). Before the accident, he worked in executive positions in the transportation, trucking, and steel industries. (Tr. 34, 41).

Plaintiff filed for disability benefits under Title II of the Social Security Act in July 1984. In that application, plaintiff alleged only physical disability ending in 1984. The Secretary denied the claim, and plaintiff did not appeal. (Tr. 8, 89). Plaintiff refiled for benefits in April 1988; the application was amended to allege a continuing period of disability starting in 1982. (Tr. 8, 119). This time plaintiff alleged a combination of mental and physical impairments. (Tr. 9). The Secretary denied this claim initially and on reconsideration. (Tr. 8, 119–21). Plaintiff received an administrative hearing, after which the ALJ found that although plaintiff suffered mental illness at the time of the hearing, he was not disabled within the time of his insured status, which ended December 31, 1983. (Tr. 11).[1] The Appeals Council denied plaintiff's request for review. (Tr. 4–5).

■ The extent of plaintiff's physical impairments is not in dispute. Nor is there any dispute that plaintiff is now disabled. The central issue in this case is whether plaintiff, while insured, suffered any mental impairments which, combined with his physical limitations, left plaintiff unable to perform substantial gainful activity. The court must decide whether there is substantial evidence to support the ALJ's determination that plaintiff was not disabled on or before December 31, 1983.

---

1. The ALJ considered the issue of res judicata, but decided plaintiff's claim on the merits because plaintiff had presented new evidence of mental impairment. (Tr. 8). Therefore, the court will consider the first application reopened.

The Secretary uses a five-step process for deciding whether a Social Security claimant is disabled. The Tenth Circuit Court of Appeals summarized the process as follows:

> In evaluating an applicant's condition to determine whether a disability exists, a series of questions are asked in turn. *See* 20 C.F.R. 404.1520(a) etc. If the claimant is presently pursuing work that constitutes gainful activity, then that person is not disabled, even if medically impaired. If the claimant is not presently doing substantial gainful activity, then the question is asked—does the claimant have a severe impairment which significantly limits his physical or mental ability to do basic work activities? If not, there is no disability. If the claimant has a severe impairment, then the question is asked—does that impairment meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, and if it has lasted or can be expected to last for at least 12 months, the person is considered disabled and there is no need to proceed further. If the impairment does not meet or equal a listed impairment, then the question is asked whether the impairment, when considered along with the applicant's residual functional capacity and the physical and mental demands of the job, prevent the applicant from doing past relevant work? If not, then there is no disability. If, however, claimant can not return to past work, the final question is whether the residual functional capacity, age, education, and work experience allow the performance of other work. If not, a finding of disability will be made.

*Kemp v. Bowen*, 816 F.2d 1469, 1474–75 (10th Cir.1987). This case was decided on the basis of the fifth step. At this step, the burden is on the Secretary to show that there is work in the national economy that the plaintiff could perform, taking into account his residual functioning capacity, age, education, and work experience. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir.1988). In this case, the ALJ used the vocational grids to determine that plaintiff was capable of performing the full range of sedentary work. (Tr. 12).

The standard of review in this case is established by 42 U.S.C. § 405(g), which provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989). It is not the duty of the court to reweigh the evidence, or substitute its decision for that of the ALJ. *Talbot v. Heckler*, 814 F.2d 1456, 1461 (10th Cir.1987). Substantial evidence, however, must be more than a mere scintilla. *Perales*, 402 U.S. at 403, 91 S.Ct. at 1428. This court's determination entails a review of "the record as a whole, and 'the substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.'" *Talbot*, 814 F.2d at 1461. (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)). In applying these standards, the court must keep in mind that the purpose of the Social Security Act is to ameliorate some of the rigors of life for those who are disabled or impoverished. *Dvorak v. Celebrezze*, 345 F.2d 894, 897 (10th Cir. 1965).

The Secretary argues that a retrospective diagnosis coupled with subjective complaints cannot support a finding of disability, citing *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir.1991). However, the court in *Flint* did not hold that a retrospective diagnosis is not probative. The timing of a diagnosis is not dispositive. *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir.1990). The issue is whether the plaintiff was disabled before December 31, 1983, when his insured status ended. *See McAdams v. Secretary*, 726 F.Supp. 579, 587 (D.N.J. 1989). In this case, Dr. Schell did not see plaintiff until 1989, but there was other evidence that plaintiff's mental impairments existed before 1984. Plaintiff sustained head injuries—facial lacerations and fractures—in the automobile accident. Dr.

Leisy saw plaintiff in the summer of 1984 and expressed the opinion that plaintiff was totally disabled by his mental condition at that time. (Tr. 216). During the time of plaintiff's insured status, plaintiff requested medication for sleep and nerves, and plaintiff's father and physical therapist both expressed concern that plaintiff had mental and emotional problems. (Tr. 9). Although this objective evidence alone does not establish disability, it must be considered along with the subjective evidence and the retrospective diagnosis. There is no evidence that plaintiff's psychological problems have any origin other than the 1982 automobile accident. Nevertheless, the ALJ found that plaintiff became disabled sometime after December 31, 1983. There is not even a scintilla of evidence to support that decision. It appears the ALJ arbitrarily chose to assign that date in order to deny benefits.

Moreover, the ALJ failed to properly consider the combined effects of plaintiff's mental and physical impairments. In this case it is clear that from the time of the accident, plaintiff's physical condition has improved while his mental condition has worsened. Clearly, plaintiff was disabled by his physical impairments alone, even if not for the requisite twelve-month period. "[W]here an emerging mental impairment overlaps in time with a triggering but diminishing physical impairment, 'the combined effect of the impairments should be considered to the extent it might bear on the onset date of disability.'" *McAdams*, 726 F.Supp. at 587 (quoting *Lichter v. Bowen*, 814 F.2d 430, 436 (7th Cir.1987). Because the ALJ arbitrarily decided that plaintiff's mental impairments did not begin until after December 31, 1983, he failed consider the combined effects of plaintiff's mental and physical impairments.

The evidence on record clearly indicates that plaintiff has a combination of objectifiable mental and physical impairments. There is no argument that plaintiff can perform any work other than sedentary work. The burden was on the Secretary to show that plaintiff could perform substantial gainful activity despite his impairments. The Secretary's decision that plaintiff could perform sedentary work while insured is not supported by substantial evidence. Plaintiff presented the testimony of a psychologist who finds him to be disabled from manic depression, alcoholism, and brain damage arising out of the 1982 automobile accident. There is no medical or other evidence in the record to the contrary. Moreover, there is substantial evidence that plaintiff was disabled by physical impairments alone for some of the time of his insured status.

■ The ALJ improperly used the medical vocational guidelines ("grids") rather than testimony of a vocational expert. The grids do not apply to this case because plaintiff suffered nonexertional limitations, mental impairments, as well as exertional limitations. *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir.1991). However, the court finds that additional factfinding on the issue of residual functional capacity would serve no purpose. Given the substantial evidence of combined exertional and nonexertional impairments, and the complete lack of any conflicting evidence, the record shows that plaintiff cannot perform sedentary work. Sedentary work is the lowest grade of work recognized by the regulations. Accordingly, the court reverses and remands to the Secretary with directions to award disability benefits to the plaintiff.

IT IS BY THIS COURT THEREFORE ORDERED that the plaintiff's motion for judgment (Doc. 22) is hereby granted.

IT IS FURTHER ORDERED that the defendant's motion for judgment (Doc. 24) is hereby denied.

The decision of the Secretary is reversed, and this action is remanded to the Secretary with directions to award disability benefits to plaintiff.