**Yvonne BIRNELL, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 98–2039–JWL.**

United States District Court, D. Kansas.

Jan. 11, 1999.

H. Reed Walker, Mission, KS, for Yvonne Birnell, plaintiff.

Melanie D. Caro, Office of United States Attorney, Kansas City, KS, for Social Security, Commissioner of, Kenneth S. Apfel, defendant.

## ORDER

LUNGSTRUM, District Judge.

On December 16, 1998, United States Magistrate Judge Gerald L. Rushfelt issued his Report and Recommendation in the above captioned matter. The time for filing objections to the Report and Recommendation has come and gone and no objections have been filed.

The court has reviewed the thorough Report and Recommendation filed by Magistrate Judge Rushfelt. Based upon that review and the fact that no objection has been filed to it, the court accepts the Report and Recommendation in its entirety and the decision of the Commissioner is reversed and this matter is remanded for further consideration consistent with the report and recommendation entered herein.

IT IS FURTHER ORDERED that the Commissioner shall order a consultative examination, which retrospectively assesses the mental health of plaintiff during the relevant time-period. The Commissioner shall require the presiding administrative law judge to complete the Psychiatric Review Technique Form with the assistance of a medical expert or remand this matter to the appropriate state agency for completion.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

### NOTICE

RUSHFELT, United States Magistrate Judge.

Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R.Civ.P. 72, file written objections to such proposed findings and recommendations, including any findings of fact and conclusions of law. A party must file any objections within the ten-day period allowed; if that party wants to have appellate review of the proposed findings of fact, conclusions of law, and the recommended disposition. If no objections are timely filed, no appellate review will be allowed by any Court.

Pursuant to a Minute Order of July 8, 1998, the undersigned Magistrate Judge respectfully submits to the District Judge the following report and recommendation:

## REPORT AND PROPOSED FINDINGS

■ Plaintiff seeks judicial review of the final decision of the defendant Commissioner of Social Security (Commissioner), which denied her claims for disability insurance benefits under Title II of the Social Security Act (the Act), as amended. Plaintiff has filed a Motion for Summary Judgment (doc. 10). Defendant has filed a brief in opposition. (*See* Brief of the Commissioner, doc. 13). The court should treat the motion as a petition for review, pursuant to D.Kan. Rule 83.7. It complies in all material respects with the requirements of the Social Security Act and the Federal Rules. The well-established standard of review for Social Security appeals applies. Judicial review of a decision by the Commissioner is limited to determining whether the administrative record as a whole contains substantial evidence to support the decision and whether the Commissioner applied the correct legal standards. *Schmitz v. Callahan*, 973 F.Supp. 1021, 1023 (D.Kan.1997), *aff'd*, 141 F.3d 1185 (10th Cir.1998). The court should rule upon the motion, as a petition for review, and resolve the action.

## I. Procedural Background

The record shows that on January 4, 1995, plaintiff protectively applied for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401–433. (*See* Certified Tr. of the Record at 34–38, doc. 9, hereinafter referred to as Tr.) She claimed disability, beginning September 1, 1988. (Tr. at 34.) The Commissioner denied the claim initially (Tr. at 39–42) and upon reconsideration (Tr. at 45–47). On September 5, 1996, an administrative law judge (ALJ) conducted a hearing on the claim. (Tr. at 401–47.) Plaintiff appeared in person with her attorney. (Tr. at 401.) On March 27, 1997, the ALJ found plaintiff "not entitled to a period of disability or disability insurance benefits." (Tr. at 21.) The ALJ found her "not disabled on or prior to her date last insured", September 30, 1994. (Tr. at 16.) After accepting additional evidence, the Appeals Council denied plaintiff's request for review on December 1, 1997. (Tr. at 5–6.) It concluded that the additional evidence provided no basis for altering the decision of the ALJ. (Tr. at 5.) The findings of the ALJ thus stand as the final decision of the Commissioner in this case.

## II. Standard of Review

■ The court reviews the decision of the Commissioner "to determine whether the record as a whole contains substantial evidence to support [his] decision and whether [he] applied the correct legal standards." *Taylor v. Callahan*, 969 F.Supp. 664, 668 (D.Kan.1997). The court may neither reweigh the evidence nor substitute its discretion for that of the Commissioner. *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir.1995). "Although the court is not to reweigh the evidence, the findings of the [Commissioner] will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the [Commissioner's] conclusions are rational." *Dreadfulwater v. Callahan*, No. 96–1173, 1997 WL 557308, at *1 (D.Kan. Aug.12, 1997). This determination entails a review of "the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision." *Vogt v. Chater*, 958 F.Supp. 537, 538 (D.Kan.1997). "In applying these standards, the court must keep in mind that the purpose of the Social Security Act is to ameliorate some of the rigors of life for those who are disabled or impoverished." *Owen v. Chater*, 913 F.Supp. 1413, 1418–19 (D.Kan.1995).

■ Section 405(g) of Title 42 of the United States Code sets forth the standard of review which the court must follow in actions asserting disability under Title II. Section 405(g) provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Miller v. Chater,* 99 F.3d 972, 975 (10th Cir.1996) (quoting *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir.1993)) (internal quotations omitted). "A finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Burkett v. Callahan,* 978 F.Supp. 1428, 1429 (D.Kan. 1997) (quoting *Trimiar v. Sullivan,* 966 F.2d 1326, 1329 (10th Cir.1992)). "The determination of whether substantial evidence supports the [Commissioner's] decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion." *Landes v. Callahan,* No. Civ.A. 96–1133–WEB, 1997 WL 557303, at *1 (D.Kan. Aug.1, 1997) (citing *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989)).

The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). For the purposes of this definition,

[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region

where such individual lives or in several regions of the country.

*Id.* § 423(d)(2)(A).

"The Commissioner has developed a five-step sequential evaluation process for determining disability." *Hayes v. Callahan,* 976 F.Supp. 1391, 1393 (D.Kan.1997) (citing *Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir.1988); 20 C.F.R. §§ 404.1520(a)–(f) and 416.920).

Step one is whether the claimant is currently engaged in substantial gainful activity. If not, the fact finder next considers whether "the claimant has a medically severe impairment or combination of impairments." Step three entails determining whether the impairment is equivalent to one of a number of impairments found in the "Listing of Impairments," 20 C.F.R. Part 404, Subpt. P, App. 1, [(the Listings)] which the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity. If no equivalency, the claimant must show that because of the impairment he is unable to perform his past work. The final step is to determine whether the claimant has the residual functional capacity (RFC) to perform other work available in the national economy, considering such additional factors as age, education, and past work experience.

*Vogt v. Chater,* 958 F.Supp. 537, 539 (D.Kan.1997) (citation omitted). "If the claimant fails at any of the steps in which he or she bears the burden of proof, consideration of any subsequent steps is rendered unnecessary. The claimant bears the burden of proof at steps one through four." *Burnett v. Shalala,* 883 F.Supp. 565, 567 (D.Kan.1995).

**III. Discussion**

Plaintiff challenges the decision of the Commissioner on three grounds. She first suggests that he committed reversible error in his evaluation of her mental impairment. She suggests that the Commissioner through the ALJ erred by not

procuring a medical expert to assist in the completion of the Psychiatric Review Technique Form (PRTF) attached to the decision denying disability benefits. She contends that, although Disability Determination Services (DDS) completed a PRTF signed by a medical consultant, DDS did not review records from Wyandot Mental Health Center (Wyandot) or Southern Hills General Hospital. She thus argues that the Commissioner has completed no PRTF with the assistance of a medical expert, which considers her post-traumatic stress and panic disorders. She asserts the ALJ mistakenly found a Global Assessment Functioning (GAF) score of 50 to indicate the ability to perform unskilled competitive work. She also suggests the Commissioner erred in failing to order a consultative examination to retrospectively assess plaintiff's mental health for the pertinent time period.

The Commissioner contends that the ALJ may complete the PRTF without assistance. He asserts that records of Wyandot through April 17, 1992, were in the administrative record prior to the hearing before the ALJ. He thus suggests no error in the procedure utilized by the ALJ. He also suggests typographical error in the ALJ's discussion of plaintiff's GAF score.

When evidence of an alleged disabling mental impairment exists, the ALJ must evaluate and document the mental impairment(s) in accordance with applicable regulations under Title II, 20 C.F.R. § 404.1520a. *Andrade v. Secretary of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir.1993). Section 421(a)(2) of Title 42 of the United States Code provides that determinations regarding disability must comport, furthermore, with pertinent procedures established by the statute.

In this case plaintiff did not indicate that she had a mental impairment in her Application for Disability Insurance Benefits, dated January 21, 1995, (Tr. at 34–38); Disability Report, dated January 23, 1995,

(Tr. at 61–69); Daily Activities Questionnaire, dated February 8, 1995, (Tr. 82–86); Request for Reconsideration, dated April 17, 1995, (Tr. at 43); Reconsideration Disability Report, dated April 17, 1995, (Tr. at 70–75); or Request For Hearing By ALJ, dated July 14, 1995, (Tr. at 48). In a letter to the Social Security Administration dated July 20, 1995, her attorney indicated, however, that plaintiff suffered from depression and anxiety. (Tr. at 87–88.) Other evidence exists, furthermore, that plaintiff had a mental impairment prior to the expiration of her insured status on September 30, 1994. (*See* Tr. at 108–22, 203–26, 252–73, 334–343.)

In view of the evidence of the existence of a mental impairment, the Commissioner must "indicate whether certain medical findings which have been found especially relevant to the ability to work are present or absent"; "rate the degree of functional loss resulting from the impairment(s)"; and "determine the severity of the mental impairment(s)." 20 C.F.R. § 404.1520a(b)(2), (b)(3), (c). If the "mental impairment(s) is severe [he] then determine[s] if it meets or equals a listed mental disorder." *Id.* § 404.1520a(c)(2). To record the conclusions of the Commissioner, the ALJ or a medical advisor completes a PRTF. *Id.* § 404.1520a(d). It serves to evaluate the claimant under proper criteria. A PRTF "must be completed ... in each case at the initial, reconsideration, administrative law judge hearing, and Appeals Council levels (when the Appeals Council issues a decision)." *Id.* A medical consultant must complete and sign the PRTF at the initial and reconsideration levels. *Id.* § 404.1520a(d)(1). Other options become available once the process reaches the hearing level. *Id.* § 404.1520a(d)(1)(i)–(iii). At that point the ALJ may complete the form with or without the assistance of a medical advisor. *Id.* § 404.1520a(d)(1)(i)–(ii). Alternatively, he or she may remand the case to the State agency for completion of the form, when "new evidence is received that is not

merely cumulative of evidence already in [the] case file or where the issue of a mental impairment arises for the first time at the administrative law judge hearing level." *Id.* § 404.1520a(d)(1)(iii).

In this instance no one completed a PRTF, before the Commissioner initially denied the claim of plaintiff on March 2, 1995, (Tr. at 39–42). In denying the claim he considered medical records of Bethany Medical Center (Tr. at 106–22); Shawnee Mission Medical Center (Tr. at 123–65); Rapid City Regional Hospital (Tr. at 166–68); M. Koehn, D.C. (Tr. at 169–82); and John E. Oxler, Jr. M.D. (Tr. at 183–93). He also considered a Black Hill Neurology examination of December 22, 1994, (Tr. at 197–98). (Tr. at 39.)

The records of Bethany Medical Center indicate a diagnosis of major depression, as of March 18, 1988. (Tr. at 108–09.) When evidence of a potentially disabling mental impairment exists, the "regulations require that a particular procedure be followed in evaluating a mental impairment and that a standard document be completed at the initial, reconsideration, A.L.J. hearing, and Appeals Council levels." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991) (citing 20 C.F.R. § 404.1520a). Before an initial determination of non-disability the applicable statute requires, furthermore, that the Commissioner make "every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment." 42 U.S.C. § 421(h).

■ "Depression is a mental impairment contained in the Listings of Impairments." *Hill,* 924 F.2d at 974. At the initial level of consideration, the Commissioner thus erred in his evaluation of the mental impairment of plaintiff. He neither followed nor documented the required procedure for such evaluation. Such error can result in a reversal and remand for further proceedings. *Id.* at 975. It may also, however, be deemed harmless. *See Bernal v. Bowen,* 851 F.2d 297, 302 (10th

Cir.1988) (finding no reversible error in the non-compliance with the regulations and statute, when the claimant was not prejudiced thereby); *see also, Fountain v. Railroad Retirement Bd.,* 88 F.3d 528, 532 (8th Cir.1996) (applying the social security regulations and holding that not all failures to complete the PRTF amount to reversible error); *Hicks v. Chater,* 99 F.3d 1149, No. 95–7151, 1996 WL 621960, at *2 (10th Cir. Oct.28, 1996) (Table, text on Westlaw) (finding no reversible error, when claimant not prejudiced by omission and the record contains a PRTF); *Watkins v. Chater,* 82 F.3d 427, No. 95–7106, 1996 WL 165300, at *2 (10th Cir. Apr.9, 1996) (Table, text on Westlaw) (same); *Montgomery v. Shalala,* 30 F.3d 98, (8th Cir.1994) (suggesting that, despite mandatory language of the regulations, courts may find the omission harmless under particular circumstances).

In this instance the error had limited, if any, impact upon the ultimate decision of the Commissioner. Before denying the claim on reconsideration on May 18, 1995, (Tr. at 45–47), the Commissioner had a psychologist, Cheryl P. Buchkoski, Ph.D., complete and sign a PRTF on May 8, 1995, (Tr. at 96–104). She considered the mental health of plaintiff. (Tr. at 96–104.) She found no medically determinable impairment. (Tr. at 96.) She noted the episode of major depression in 1988, but found no significant depressive or other psychological symptoms at or before date last insured. She further noted that plaintiff's activities of daily living were "restricted 2˜to pain but not severely." (Tr. at 97.) She found no restriction of daily living; difficulties in maintaining social functioning; deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner; or episodes of deterioration or decompensation in work or work-like settings which resulted in withdrawal from the situation or to exacerbate signs or symptoms. (Tr. at 103.) Dr. Buchkoski's consideration of the depression of plaintiff appears to have

remedied whatever prejudice might have resulted from the failure to complete a PRTF before the initial denial by the Commissioner.

The Commissioner was privy · to the PRTF completed by Dr. Buchkoski, when he denied plaintiff's claim on reconsideration. He considered the same medical evidence as was available at the initial level, as well as records from Black Hills Neurology (Tr. at 195–96) and certain unknown additional records from Dr. Koehn purportedly received May 5, 1995. (Tr. at 45.) The records from Black Hills contain the following assessment of Matthew E. Simmons, M.D., dated March 8, 1995:

> Suspect an asymptomic meningioma of the right frontal region. 40 y.o. woman with a multitude of complaints including neck pain, back pain, right arm pain, blackouts, mood swings, and headaches. The cause for these variable symptoms is uncertain. In general, it would appear that some of this is nonorganically related and instead may be of psychogenic basis. Overall it would appear that the patient has some sort of benign pain syndrome and perhaps related to soft tissues. There does not appear to be anything which would require surgical treatment at this time.

(Tr. at 196.) Dr. Simmons recommended that plaintiff pursue "a neuropsychometic evaluation to see whether there might be some psychological factors or emotional functioning contributing to her symptoms." (Tr. at 195.)

The recommendation of Dr. Simmons prompted a discussion at DDS as to whether to pursue a consultative examination to explore the possible psychogenic component of plaintiff's pain. (Tr. at 92–95.) DDS concluded that a consultative examination would serve no purpose, as it would only give a picture of the "*current* functioning" of plaintiff. (Tr. at 94.) It further concluded that it could not assume that a current evaluation would accurately depict her behavior in September 1994. (Tr. at 95.) This discussion culminated with the PRTF completed by Dr. Buchkoski. (Tr. at 96–104.)

The ALJ correctly followed the regulatory and statutory procedure at the reconsideration level. Section 404.1520a of Title 20 of the Code of Federal Regulations requires that a qualified psychologist or psychiatrist complete and sign the PRTF. No one questions the qualifications of Dr. Buchkoski. The statute, 42 U.S.C. § 421(h), requires that, before an initial determination of non-disability by the state agency or by the Commissioner upon review of an agency determination, the Commissioner make every reasonable effort to have a qualified psychiatrist or psychologist complete the medical portion of the case review and any applicable residual functional capacity. When the Commissioner denied the claim of plaintiff at the reconsideration level, he had complied with 20 C.F.R. § 404.1520a and 42 U.S.C. § 421(h).

Plaintiff suggests error in the failure to conduct the consultative examination suggested by Dr. Simmons and discussed by DDS. The Commissioner, however, has "broad latitude" in deciding whether to order a consultative examination. *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990). At this stage of the process, the Commissioner did not err by not ordering a consultative examination. *See Hawkins v. Chater*, 113 F.3d 1162, 1165 (10th Cir. 1997). The record as it existed at the reconsideration level contained no objective evidence of a mental impairment. At that point, the only evidence indicating such an impairment was a diagnosis of depression made at Bethany Medical Center by a medical doctor (Tr. at 108–13) and the speculative possibilities espoused by Dr. Simmons (Tr. at 195–96). Neither the diagnosis nor the speculation, however, were based upon any testing or other objective evidence. The records containing the diagnosis of depression, furthermore, also contain many indicators that the depression might be situational. Plaintiff ap-

parently was having many difficulties at home with her husband and children. (*See* Tr. at 108–13.)

Aside the absence of objective evidence of a mental impairment, a psychologist, Dr. Buchkoski, had completed a PRTF. (Tr. at 96–104.) She opined that plaintiff suffers from "no medically determinable impairment." (Tr. at 96.) She specifically stated that there was no indication of significant functional limitations on the basis of psychological problems. (Tr. at 103.) In view of the administrative record at that time, "the report is substantial evidence supporting the conclusion that claimant does not suffer from a severe mental impairment.... Given this state of the record, the ALJ was not required to order further psychological examination." *Hawkins*, 113 F.3d at 1165.

The administrative record grew substantially, however, between the reconsideration and hearing levels. When the ALJ issued her final decision, the administrative record contained medical records from Wyandot (Tr. at 203–26, 252–73), Ann Haddhorst, M.D. (Tr. at 27–30, 274–77), Southern Hills General Hospital (Tr. at 231–48, 291), and Bethany Medical Center (Tr. at 298–333, 337, 345–69), which were not considered at the initial or reconsideration levels. The administrative record also contained "new" records of Bethany Medical Center (Tr. at 334–36, 338–44) which merely duplicated records previously before the Commissioner (Tr. at 108–22).

The additional medical evidence contains new information with respect to the mental health of plaintiff. In November 1988 plaintiff pursued treatment at Wyandot. Her psychiatric diagnosis, as revealed on a DSM III–R Diagnostic Summary, was adjustment disorder with mixed emotional features. At that time she had a GAF score of 60. (Tr. at 207, 257.) She began counseling for marital and other family problems. The counseling ended in April 1989, when she stopped attending. (Tr. at 203–15, 253–64.) Upon termination of treatment her primary diagnosis was "Per-

sonality disorder NOS (Self-defeating)." Her GAF score was 50. (Tr. at 215, 264.) In September 1991 she pursued further treatment at Wyandot. (Tr. at 216–26, 265–73.) On a DSM–III–R Diagnostic Summary the clinician diagnosed post-traumatic stress disorder. (Tr. at 223, 271.) Plaintiff had a then current GAF score of 50, which had not been exceeded in the previous twelve months. (Tr. at 223, 271.) The treatment ended after she failed to show for appointments after October 10, 1991. Her then primary diagnosis was "Post Traumatic Stress Disorder." Her GAF score remained at 50. (Tr. at 226, 273.)

Two other additions to the administrative record before the ALJ address the mental health of plaintiff: (1) a Discharge Summary of Bethany Medical Center relating to plaintiff's admission for depression in March 1988 (Tr. at 337) and (2) medical records from Southern Hills General Hospital (Tr. at 231–48, 291). Other records of Bethany Medical Center, however, essentially duplicate the added summary. (*See* Tr. at 108–22.) The records from Southern Hills, furthermore, add little to an assessment of the mental health of plaintiff, except that Victoria Andersen, M.D. assessed in August 1996 that plaintiff had "[h]yperventilation due to panic anxiety disorder." She also noted "a history of anxiety attacks on and off." (Tr. at 248.)

Based upon the information before Dr. Buchkoski and the additional medical records submitted thereafter, the ALJ completed a PRTF at the hearing level, without assistance from a medical expert. (Tr. at 22–26.) Her PRTF differs significantly from the one completed by Dr. Buchkoski. (*Compare* Tr. at 22–26 *with* Tr. at 96–104.) The ALJ found the presence of an affective disorder, as exhibited by situational depression; an anxiety related disorder, as exhibited by atypical anxiety; and a personality disorder, as characterized by intense and unstable interpersonal relationships and impulsive and damaging behavior. (Tr. at 22–24.) She also found

a substance abuse disorder, which she evaluated under the applicable listings for the other disorders of plaintiff. (Tr. at 24.) In rating the severity of plaintiff's impairments she found moderate restriction of daily living and difficulty in maintaining social functioning. (Tr. at 25.) She also found no deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner and only one or two episodes of deterioration or decompensation in work or work-like settings which resulted in withdrawal from the situation or to exacerbate signs or symptoms. (Tr. at 25–26.) She found no functional limitation which had manifested itself at a level to satisfy the listings. (Tr. at 26.)

The differences between the two PRTFs are easily reconciled once one examines the medical records as they existed at the time each PRTF was completed. The ALJ had more medical records before her. Dr. Buchkoski had no opportunity to review medical records from Wyandot or Dr. Andersen. The administrative record did not yet contain them. (*See* Tr. at 45.)

 Although the Commissioner did not err by not ordering a consultative examination at the reconsideration level, he did err when he elected not to pursue such an examination before his decision at the hearing level. Subsection (f) of section 404.1512 of Title 20 of the Code of Federal Regulations provides that, if necessary information "is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source," a consultative examination will be ordered. Social Security Ruling (SSR) 96–7p indicates, furthermore, that

> [t]he adjudicator must develop evidence regarding the possibility of a medically determinable mental impairment when the record contains information to suggest that such an impairment exists, and the individual alleges pain and other symptoms, but the medical signs and laboratory findings do not substantiate

any physical impairment(s) capable of producing the pain or other symptoms.

Titles II and XVI: Evaluation of Symptoms in Disability Claims; Assessing the Credibility of an Individual's Statements, 61 Fed.Reg. 34,483, 34,485 n. 3 (1996). Social security rulings are binding on an ALJ. *Nielson v. Sullivan*, 992 F.2d 1118, 1121–22 (10th Cir.1993). In addition the Tenth Circuit Court of Appeals has stated that "the ALJ should order a consultative exam when evidence in the record establishes the reasonable possibility of the existence of a disability and the result of the consultative exam could reasonably be expected to be of material assistance in resolving the issue of disability." *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997). Once the claimant places in the record, "evidence sufficient to suggest a reasonable possibility that a severe impairment exists ... then, and only then, [does it become] the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment." *Id.* at 1167. "The pertinent inquiry is 'whether the record contained sufficient medical evidence for the [Commissioner] to make an informed decision as to [claimant's] alleged mental impairment,' without the need for a consultative psychological examination." *Torres v. Secretary of the United States Dep't of Health & Human Servs.*, 17 F.3d 1437, No. 93–2126, 1994 WL 47166, at *3 (10th Cir. Feb.17, 1994) (quoting *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989)).

The DSM–III–R Diagnostic Summaries provide objective evidence of a mental disorder during the period plaintiff was last insured under the Social Security Act. "DSM III–R is specialized literature that specifically catalogues the symptoms of mental disorders and prescribes the methods by which the psychological evaluation should take place." *Isely v. Capuchin Province*, 877 F.Supp. 1055, 1062 (E.D.Mich.1995). The DSM III–R is generally accepted in psychology and has been

exposed to objective scientific scrutiny and empirical verification. *Id.* The GAF Scale contained within DSM–III–R, furthermore, is an objective classification system. *Schmidt v. Callahan,* 995 F.Supp. 869, 886 n. 13 (N.D.Ill.1998).

The evidence before the ALJ reasonably established the possibility of the existence of a disabling mental impairment. Excluding a substance abuse disorder which has no recorded diagnosis, the record reveals five possible mental impairments: (1) depression, (2) adjustment disorder with mixed emotional features, (3) self-defeating personality disorder, (4) post-traumatic stress disorder, and (5) panic anxiety disorder. The record consistently listed plaintiff's GAF score to be 50, except for one notation of 60. A score of 50 or less indicates that one exhibits serious symptoms or a serious impairment in social, occupational, or school functioning, such as the inability to keep a job. American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders DSM–IV* at 32 (4th ed.1994).

In addition the ALJ found the presence of severe mental impairments which do not meet the listings. (Tr. at 22.) On her PRTF she recorded that plaintiff had situational depression, atypical anxiety, a personality disorder, and a substance abuse disorder. (Tr. at 22–24.) In denying benefits, she found that prior to the expiration of her insured status, plaintiff had "depression with anxiety [and] a personality disorder." (Tr. at 20.) The ALJ recognized the GAF score of 50, but mischaracterized it as indicating "the ability to handle unskilled competitive employment." (Tr. at 18.) It appears unlikely that this reference to a score of 50 is a typographical error. The ALJ states "[o]n several occasions, the claimant's overall level of functioning (GAF) was assessed at 50." (Tr. at 18.) That statement is correct. Changing the 50 to a 60 makes the statement incorrect, in that the record does not contain several instances of an assessment of 60, but only one.

The question thus becomes whether the consultative examination would be necessary or helpful to resolve the issue of impairment. In each instance plaintiff's treatment of her mental conditions ended before resolution of the impairment. When evidence of a mental impairment exists, however, it becomes necessary to assess the mental RFC of plaintiff. A consultative examination would appear both necessary and helpful to that assessment. The problem here lies with the expiration of plaintiff's insured status in September 1994.

■■■ DDS hypothesized that a consultative examination would reveal only the current status of plaintiff. Such hypothesis appears untrue. A retrospective diagnosis can be probative of disability. *Manning v. Secretary of Health & Human Servs.,* 810 F.Supp. 1220, 1223 (D.Kan.1993). "The timing of a diagnosis is not dispositive." *Id.* The issue is whether plaintiff was disabled before September 30, 1994, when her insured status expired. That an examination is consultative does not foreclose the possibility of obtaining a probative retrospective diagnosis. *See Walton v. Shalala,* No. 92–4200–SAC, 1993 WL 153938, at *8 (D.Kan. Apr.30, 1993) (considering the prospect of ordering such a consultative examination, but rejecting it because the plaintiff presented no reasonable basis for why a retrospective diagnosis would differ from contemporaneous ones).

■■■ Plaintiff here has presented an adequate basis for concluding that a retrospective diagnosis may be helpful. The record does not appear to contain sufficient medical evidence for the Commissioner to make an informed decision regarding plaintiff's mental health during the relevant time-period. A consultative examination appears reasonably likely to shed some light on that issue, in view of the present state of the administrative record. One can reasonably expect a consultative examination, albeit retrospective, to be of material assistance in resolving the

issue of disability. Although a retrospective diagnosis alone will not support a finding of disability, *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir.1995), other evidence of record combined with a retrospective diagnosis may provide the necessary support. In this instance there is evidence of an actual mental impairment during the relevant time period, which could provide the necessary additional support for a finding of disability. On the record before it the court should find that plaintiff has presented sufficient medical evidence to warrant further investigation of her mental condition as it relates to her claim of disability.

SSR 96–7p requires the ALJ to develop evidence as to the possibility of a medically determinable mental impairment, moreover, when the record suggests its existence and the claimant alleges pain or other symptoms, even though the medical signs and laboratory findings do not substantiate a physical impairment capable of producing the pain or other symptoms. Plaintiff here has alleged a multitude of subjective complaints which have no basis substantiated by the medical record. They include fatigue, weakness, nausea, headaches, and other pain. The ALJ essentially has recognized this fact. (*See* Tr. at 16.) It was therefore incumbent upon her to adequately develop the record as to possible mental impairments. A consultative examination to obtain a retrospective diagnosis would address that need.

■ Plaintiff also argues that the ALJ erred in completing the PRTF. In the context of this case the ALJ appears to have abused her discretion in completing the PRTF herself, as permitted by 20 C.F.R. § 404.1520a. *See Andrade v. Secretary of Health & Human Servs.*, 985 F.2d 1045, 1050 (10th Cir.1993). Although a psychological expert, Dr. Buchkoski, had completed a PRTF, additional medical records relating to the mental health of plaintiff were subsequently admitted into the administrative record. They contain diagnoses of mental impairments other than the depression considered by Dr. Buchkoski. An ALJ should not usurp the role of the medical expert by completing a PRTF in the first instance. When significant new evidence regarding the mental health of a claimant arises at the hearing level, the ALJ should procure the assistance of a medical advisor to complete the PRTF or remand the matter to the appropriate state agency for completion. Under these circumstances the ALJ should not complete the form without the assistance of a medical advisor. To do so appears to be an abuse of discretion.

■ The ALJ also failed to comply with the statutory requirements of 42 U.S.C. § 421(h). It provides that

[a]n initial determination under subsection (a), (c), (g), or (i) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner of Social Security has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

This provision applies to claims for disability insurance benefits. *Andrade v. Secretary of Health & Human Servs.*, 985 F.2d 1045, 1049 (10th Cir.1993). The purpose of this provision is "to ensure the availability of 'mental health specialists' in mental impairment cases." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir.1990).

Nothing in the record indicates that the ALJ made any effort to ensure that a qualified psychiatrist or psychologist completed the medical portion of the case review after the administrative record was supplemented with additional medical records indicating severe mental impairments and before she denied benefits. Case law does not define "initial determination", as used in 42 U.S.C. § 421(h). It seems consistent with the purpose of the statute to interpret it broadly to mean the initial

determination of each mental impairment, rather than narrowly to refer only to the initial determination period, regardless of whether later mental impairments come to light. The broad interpretation appears consistent, furthermore, with existing Tenth Circuit precedent. *See Andrade,* 985 F.2d at 1049–50.

In summary, the court should find the Commissioner erred in the following procedural respects: (1) not ordering a consultative examination of plaintiff's mental impairments before the ALJ rendered her decision at the hearing level; (2) not procuring the assistance of a medical expert in the completion of the PRTF at the hearing level or remanding the matter to the appropriate state agency for completion; and (3) not making every reasonable effort to ensure that a qualified psychiatrist or psychologist had completed the medical portion of the case review and any applicable residual functional capacity assessment, after the medical record had been substantially supplemented with additional medical records showing the existence of severe mental impairments. These procedural errors dictate reversal of the decision of the Commissioner and remand for further proceedings to remedy them.

██ Upon remand the ALJ should consider the medical records submitted by plaintiff at the Appeals Council level (Tr. 377–400). When a claimant submits new evidence to the Appeals Council and it considers that evidence in denying a request for review, the new evidence becomes a part of the administrative record. *O'Dell v. Shalala,* 44 F.3d 855, 859 (10th Cir.1994); *Robertson v. Chater,* 900 F.Supp. 1520, 1524 (D.Kan.1995); *Jones v. Sullivan,* 804 F.Supp. 1398, 1404 (D.Kan. 1992). The submitted evidence has some components which support and others which detract from the decision of the ALJ. Although these records are for the time-period after September 30, 1994, they may nevertheless prove insightful with respect to the disability status of plaintiff.

Plaintiff next suggests that the ALJ erred in finding her testimony not credible. She asserts that substantial evidence does not support the credibility assessment. She argues that the ALJ failed to comply with Social Security Rulings 82–58 and 96–7p. She contends the assessment is flawed, furthermore, because it is based upon an underlying psychiatric assessment which does not comply with the law.

Plaintiff also suggests error in the formulation of her RFC by the ALJ. She contends the RFC incorporated less than all of her limitations related to basic work activities. She further argues the ALJ was unqualified to formulate the mental RFC without expert assistance. She asserts the RFC is flawed, as based upon a faulty credibility finding.

In light of the procedural errors committed at the hearing level, the court need not address the issues raised against the credibility determination or RFC formulation. At this time one cannot determine to what extent; if any, the procedural errors may have affected these matters. The results from the consultative examination might alter the credibility findings. Assistance from a qualified psychiatrist or psychologist in completing the PRTF might also change them. Upon remand, the Commissioner may need to revise the credibility determination to take into consideration the psychiatric impairment(s) of plaintiff as assessed by an expert. A change in the credibility findings might in turn alter the RFC formulation.

An apparent need exists to stress the crucial nature of the determination of plaintiff's mental RFC. *Cruse v. United States Dep't of Health & Human Servs.,* 49 F.3d 614, 619 (10th Cir.1995) ("When the listing requirements for mental disorders are not met, but the impairment is nonetheless severe, '[t]he determination of mental RFC is crucial to evaluation of an individual's capacity to engage in substantial gainful work activity.' "). The RFC formulation by the ALJ appears lacking in several respects. Should the Commission-

er determine upon remand that severe mental impairment(s) of plaintiff does not satisfy the listing requirements, then he should adequately determine the mental RFC of plaintiff. A failure to do so in such instances would be reversible error.

In assessing a claimant's mental RFC, the ALJ should consider, among other things, the claimant's ability to engage in the activities of daily living; to interact appropriately with the public, supervisors, and co-workers; to focus long enough to complete tasks in a timely fashion; and to adapt to stressful circumstances without either withdrawing from the situation or experiencing increased signs and symptoms of the claimant's mental disorder.

*Tibbits v. Shalala,* 883 F.Supp. 1492, 1499 (D.Kan.1995). The ALJ must also

remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria [on the PRTF] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment as used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, Social Security Ruling 96–8p, 1996 WL 374184, at *4 (July 2, 1996).

If the court deems remand necessary, it should also provide additional guidelines to the Commissioner regarding his analysis at Step 4. In *Washington v. Shalala,* 37 F.3d 1437 (10th Cir.1994) the Tenth Circuit Court of Appeals provides the following pertinent guidance:

While the claimant retains the burden of showing that he is disabled at step four, the ALJ has a duty "of inquiry and factual development." The ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." Further, when the claimant's impairment is a mental one, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work. . . .

On remand, the ALJ must not only develop the record concerning the demands of plaintiff's past relevant work, but make findings that compare the mental and physical demands of that work with plaintiff's capabilities. . . .

. . . "[A] finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time."

37 F.3d at 1442 (citations omitted); *see also, Winfrey v. Chater,* 92 F.3d 1017, 1025 (10th Cir.1996) (thoroughly setting forth requirements regarding Step 4 assessments of a plaintiff's ability to perform his or her past relevant work).

Plaintiff also asks the court to admonish DDS to comply with regulations relating to development of the record. The court should decline to do so. As admitted by plaintiff, the actions and omissions of DDS are not before the court. This Report and Recommendation, if supported by the court, should serve as an adequate reminder of statutory and regulatory obligations to develop the administrative record.

### RECOMMENDATION

The court should reverse the decision of the Commissioner and remand this matter

for further consideration consistent with this report and recommendation. It should direct the Commissioner to order a consultative examination, which retrospectively assesses the mental health of plaintiff during the relevant time-period. It should also direct the Commissioner to require the presiding ALJ to complete the PRTF with the assistance of a medical expert or to remand the matter to the appropriate state agency for completion. This reversal will dispose of this case, including the Motion for Summary Judgment (doc. 10) which has been considered as a petition for review.

December 16, 1998.