**Mary L. ROBERTSON, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security.[1]**

**No. 94–4226–SAC.**

United States District Court, D. Kansas.

Aug. 11, 1995.

**1.** Effective March 31, 1995, the functions of the Secretary of Health and Human Services in so-

cial security cases were transferred to the Commissioner of Social Security. P.L. No. 103–296. The court hereby substitutes the Commissioner for the Secretary in the caption of this case. In the body of the order, however, the court will still refer to the Secretary who was the acting party in the underlying proceedings.

Patrick H. Donahue, Kansas Legal Services, Inc., Topeka, KS, Judith A. Jones, Hiawatha, KS, for plaintiff Mary Robertson.

Melanie D. Caro, Office of United States Attorney, Topeka, KS, for defendant HHS Secretary, Donna Shalala.

## MEMORANDUM AND ORDER

CROW, District Judge.

This is an action to review the final decision of the Secretary of Health Human Services [42 U.S.C. § 405(g)] denying disability insurance benefits to the plaintiff, Mary L. Robertson. The case is ripe for decision on the plaintiff's motion for summary reversal or remand (Dk. 9) and on the Secretary's motion for an order affirming the Secretary's decision (Dk. 10).[2]

**PROCEDURAL HISTORY**

On August 21, 1992, Robertson filed her application for disability insurance benefits alleging she was unable to work as of July 12, 1991, because of a torn rotator cuff. Her claim was denied initially and on reconsideration. At the hearing on December 3, 1993, before the administrative law judge ("ALJ"), Robertson appeared with a representative who was not an attorney. Following the hearing, the ALJ issued his decision on February 19, 1994, finding that Robertson was not under a "disability" at any time from the alleged onset date through the date of the ALJ's decision. With the aid of an attorney, Robertson requested review before the Appeals Council. Robertson submitted arguments and additional evidence consisting of Dr. Richard Wendt's treatment notes and Lawrence Memorial Hospital's records from her admissions in January and May of 1994. After considering the argument and new evidence, the Appeals Council on September 23, 1994, denied Robertson's request for review. Thus, the ALJ's decision stands as the Secre-

**2.** The parties appear to have followed D.Kan. Rule 503 which provides for the filing of "an appropriate dispositive motion and memorandum" for a social security appeal. The Tenth Circuit in *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1579 n. 29 (10th Cir.1994), disapproved this rule and, specifically, the motion practice under it. The court is in the process of changing D.Kan.Rule 503 to comply with the holding in *Olenhouse* and to conform with Fed. R.App.P. 15. For purposes of the present appeal, the court attaches no legal significance to the dispositive motions that accompany the parties' memoranda. The court intends to follow the well-established standard of review for social security appeals and to rely only on what evidence is found within the administrative record.

tary's final decision. *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir.1994) (citing *See* 20 C.F.R. § 404.981).

## STANDARD OF REVIEW

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the finding of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is more than a scintilla and is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401–02, 91 S.Ct. 1420, 1427–28, 28 L.Ed.2d 842 (1971); *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989). "A finding of ' "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." ' " *Trimiar v. Sullivan,* 966 F.2d 1326, 1328 (10th Cir.1992) (quoting *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir.1983)) (quoting *Hemphill v. Weinberger,* 483 F.2d 1137 (5th Cir. 1973)). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir.1994) (citation omitted).

The court's review also extends to determining whether the Secretary applied the correct legal standards. *Washington v. Shalala,* 37 F.3d 1437, 1439 (10th Cir.1994). Besides the lack of substantial evidence, reversal may be appropriate when the Secretary uses the wrong legal standards or the Secretary fails to demonstrate reliance on the correct legal standards. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir.1994).

The court's duty to assess whether substantial evidence exists:

"is not merely a quantitative exercise. Evidence is not substantial 'if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.' "

*Gossett v. Bowen,* 862 F.2d 802, 805 (10th Cir.1988) (quoting *Fulton v. Heckler,* 760 F.2d 1052, 1055 (10th Cir.1985)). The court is not to reweigh the evidence or substitute its judgment for the Secretary's. *Glass v. Shalala,* 43 F.3d at 1395. The court typically defers to the ALJ on issues of witness credibility. *Hamilton v. Secretary of Health & Human Services,* 961 F.2d 1495, 1498 (10th Cir.1992). The courts, however, do not mechanically accept the Secretary's findings. *Claassen v. Heckler,* 600 F.Supp. 1507, 1509 (D.Kan.1985); *see Ehrhart v. Secretary of Health & Human Services,* 969 F.2d 534, 538 (7th Cir.1992) ("By the same token, we must do more than merely rubber stamp the decisions of the Secretary." (citation omitted)). Nor will the findings be affirmed by isolating facts and labelling them substantial evidence, as the court must scrutinize the entire record in determining whether the Secretary's conclusions are rational. *Holloway v. Heckler,* 607 F.Supp. 71, 72 (D.Kan.1985). " 'We examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis determine if the substantiality of the evidence test has been met.' " *Glenn v. Shalala,* 21 F.3d 983, 984 (10th Cir.1994) (quoting *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 800–01 (10th Cir.1991)); *see Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951).

Any new evidence submitted to the Appeals Council and considered by it in denying a request for review becomes a part of the administrative record. *O'Dell v. Shalala,* 44 F.3d 855, 859 (10th Cir.1994); *Jones v. Sullivan,* 804 F.Supp. 1398, 1404 (D.Kan. 1992). Thus, the court reviews the ALJ's decision for substantial evidence considering not only the evidence before the ALJ but also the evidence first submitted to the Appeals Council. *Id.*

For evaluating a claim of disability, the Secretary has developed a five-step sequential process. *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 2290–91, 96 L.Ed.2d 119 (1987). This process comes to an end if at any point the Secretary determines the claimant is disabled or not. *Thompson v. Sullivan,* 987 F.2d 1482, 1486 (10th Cir.1993). The first four steps are not at issue in this appeal. The ALJ denied benefits here at step five. Once the claimant proves his disability prevents him from engaging in his prior work for a continuous

period of twelve months, the burden shifts to the Secretary to show that the claimant has the residual functional capacity ("RFC") to do other work that exists in the national economy. *Thompson,* 987 F.2d at 1487. RFC is "what the claimant can still do despite his ... limitations." *Id.* The Secretary satisfies this burden of proving RFC and existing jobs if substantial evidence supports her findings. *Id.*

## ALJ'S DECISION

In his order of February 19, 1994, the ALJ made the following findings:

1. The claimant met the earnings requirements of the Act on July 12, 1991, the date she stated she became unable to work, and continued to meet them through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since July 12, 1991.

3. The medical evidence establishes that the claimant has the following severe impairments: is status post a right acromioplasty and repair of a rotator cuff tear, has small internal hemorrhoids, is status post angioedema of the left eye, degenerative joint disease of the lumbar spine and some mild spinal stenosis. Nevertheless, she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's testimony and that of her witness is not found credible when considered in light of the medical signs and findings, history of medical treatment, reports of treating and examining physicians and the inconsistencies in the claimant's testimony, all of which is discussed more fully in the Rationale section of this decision.

5. The claimant has the residual functional capacity to perform work-related activities except for work involving lifting or carrying more than 20 pounds maximum occasionally and 10 pounds frequently, reaching overhead and requiring a sit$stand option at the claimant's discretion (20 CFR 404.1545).

6. The claimant is unable to perform her past relevant work as a machine operator.

7. The claimant is 52 years old, which is defined as a individual closely approaching advanced age (20 CFR 404.1563), and she has a high school education (20 CFR 404.1564).

8. The claimant has no acquired work skills which are transferable to the skilled or semi-skilled work functions of other work within her residual functional capacity (20 CFR 404.1568).

9. After considering the vocational expert's testimony in conjunction with the claimant's above described residual functional capacity for less than the full range of light work and her age, education, past relevant work and nonexertional impairments, the undersigned Administrative Law Judge is persuaded that the claimant would be able to make a vocational adjustment to work which exists in significant numbers in the local and national economies.

10. The claimant has not been under a "disability," as defined in the Social Security Act, as amended, at anytime since her alleged onset date of disability of July 12, 1991, and through the date of this decision (20 CFR 404.1520(f)).

(Tr. 19–20). Robertson argues the ALJ failed to develop an adequate record, failed to consider the total limiting effects of her different impairments, erred in evaluating the limiting effects of her pain, erred in evaluating her credibility, and erred in assessing the impact of her nonexertional limitations. As background to its discussion of these different issues, the court summarizes the events and medical records relevant to them.

## FACTS

At the time of the hearing, Robertson was a fifty-two year old woman who had been married to her husband for thirty-two years. From 1969 until her on-the-job injury on July 12, 1991, Robertson had worked at Hallmark. Her last job assignment at Hallmark involved operating a packaging machine.

In July of 1991, Robertson strained her right arm. She was put on light duty and

seen by her treating physician, Dr. Sosinski. Hallmark referred her to Dr. Delgado. Conservative medical treatment did not alleviate the problems in Robertson's right shoulder. An arthrogram revealed a torn rotator cuff. In October of 1991, Dr. Delgado surgically repaired the torn rotator cuff. After a couple of weeks, Dr. Delgado referred Robertson to physical therapy. Later in November, Robertson returned to light-duty work.

In January of 1992, Dr. Delgado recorded that Robertson's motion in her shoulder was improving with less pain and better strength. Dr. Delgado expected she would be able to return to regular work activity in a month. In February, Robertson still complained of shoulder pain associated with work, so the light duty restrictions were not lifted. The next month, Robertson was subjected to complete isometric upper extremity testing and a bilateral range of motion shoulder study. The results showed "poor endurance for sustained activities" and identified her most difficult problem in the right shoulder "with pain an obvious limiting factor." (Tr. 151). In July 1992, Dr. Delgado apparently concluded his treatment of Robertson noting "excellent" range of motion, "adequate strength," and "no crepitation." He further observed:

> She could [be] strengthening it but at this point I doubt if Ms. Robertson is motivated to return to work activities. She had no other complaints related to the arm neck and normal neurological evaluation. She had no clinical atrophy, fasciculations or fibrillations and no particular tenderness in the shoulder.

(Dk. 155). Robertson filed against Hallmark a worker's compensation claim that was eventually settled. After months of light duty work, Robertson testified that her shoulder prevented her return to Hallmark.

Beginning in April of 1992, Robertson apparently saw William Miller, a chiropractor, for pain complaints in the lower back, neck and rotator cuff. The records obtained from Miller do not show the number or frequency of Robertson's visits or the treatment received. Miller opined in a letter dated November 24, 1993, that Robertson's condition prevents her from returning "to any type employment." (Tr. 208).

In July of 1992, Robertson was admitted to Lawrence Memorial Hospital on complaints of chest pain. A chest x-ray, blood tests, and a cardiac enzyme did not yield any abnormal results of concern.

In 1987, Robertson was referred to Dr. Richard Sosinski for chest pains, and his records suggest that he then became her regular treating physician. In her disability report, Robertson identified Dr. Sosinski as her "regular doctor." (Tr. 116). In May of 1987, Dr. Sosinski concluded that Robertson's chest pains were "probably muscular with a large anxiety component." He prescribed medications for the anxiety. In July of 1991, Dr. Sosinski treated her for rectal bleeding caused by internal hemorrhoids. In September of 1992, the plaintiff visited Dr. Sosinski for swelling of her left eye. He treated the condition as allergic and it eventually improved. In October of 1992, Robertson complained of left flank pain, and he conducted various procedures to rule out renal and gastrointestinal causes of the pain.

In January of 1993, the psychiatric consultant in this case contacted Dr. Sosinski to discuss Robertson's anxiety problems for which he had prescribed Xanax. The notes from that contact state:

> He [Dr. Sosinski] indicated that her [Robertson's] anxiety was related to her concern about the significance of symptoms she has had involving various organ systems including her back, shoulder, kidneys, heart and colon. He also indicated that her anxiety has not been of major significance as far as her being able to work is concerned.

(Tr. 192). Another consultant contacted Dr. Sosinski in February of 1993 with regards to Robertson's back problems:

> Dr. Sosinski did indicate that he had seen Ms. Robertson recently. He did not feel she had any major problem with her ability to stand and walk. She was having back pain which was somewhat different than the flank pain that he had evaluated her for in the past. He estimated her range of motion to be somewhat restricted to approximately 70 to 80 degrees.

(Dk. 193). Dr. Sosinski was last contacted in August of 1993, and the notes from that contact, signed by Dr. Sosinski, read:

Mary Robertson is a 51–year–old White female who I have seen at first as a consultant and then as her primary care physician since 1987. She has had a few medical problems. When I first saw her she was having chest pain, but ended up having normal coronary angiography in 1987. She also later on several years ago had some bright red rectal bleeding, but workup was likewise negative and included colonoscopy. She has had a history of osteoarthritis mostly affecting her back, but has not had radicular signs or symptoms. An MRI scan showed some mild spinal stenosis and no herniated disc or nerve root compression. She also recently, on 7–12–93 had an auto accident with a whiplash injury, but has not followed up and I presume feels reasonably well from that. She is a very anxious lady and has had some difficulty with anxiety over the years. She has no known cardiac, pulmonary or renal disease or any other serious disease of which I am aware.

I believe that she is able to do work-related activities such as sitting, standing, moving about, handling objects. Hearing, speaking and traveling are no problem and there is no evidence of mental impairment or ability to reason, to make occupational, personal or social adjustments. She should not lift or carry more than 20 pounds and should not do frequent stooping or lifting. Should there be any further questions, please contact me.

(Dk. 200).

In April of 1993, Robertson began seeing Dr. Richard Wendt for her back pain in the low lumbar area and leg pain. Dr. Wendt noted that the x-rays showed some changes at L5–S1 but they were not very significant degenerative changes. Dr. Wendt prescribed an epidural block, changed her pain medicine, and referred her to therapy. His notes showed that this treatment improved her conditions somewhat but that on follow-up examinations she still complained of the same or similar problems. Medical notes show two other epidural blocks were given and the pain medications were changed several times.

In January of 1994, Robertson was briefly admitted to Lawrence Memorial Hospital on complaints of chest pain with considerable anxiety. On admission, it was believed her pain was musculoskeletal but angina needed to be ruled out. Later tests showed no myocardial injury, and she was released with no observed substernal chest pain. In May of 1994, Robertson again appeared at the emergency room with similar complaints of chest pain and was admitted for observation. She was initially assessed as having a history of anxiety disorder.

At the hearing held on December 3, 1993, Robertson testified she left Hallmark because of "pain with my back, shoulder and the anxiety attacks." (Tr. 33). She described these anxiety attacks as when "I just get kind of disoriented and hyperventilating." (Tr. 33). Robertson said she could not work now because she was in "pain all the time" that was located in her "back, arm, shoulders and neck." (Tr. 34).

The ALJ described light duty work and asked if she thought she could do it. Robertson answered "I don't think I could do it" offering that she "couldn't concentrate." (Tr. 34). Robertson then explained her concentration problem in these terms: "I don't know. It seems like—I don't know if it's old age or what, but I just seem to lose my concentration a lot—my train of thought or what I—when I start talking, I—and I sometimes blame it on the medication but I don't know." (Tr. 35). The ALJ later repeated his question whether she could do light duty work, and Robertson answered: "Because of the pain and the—I'd have to keep moving and I don't think I could keep my concentration on what I was doing." (Tr. 36).

As far as Robertson's daily activities, she testified to being able to drive, attend church and do housework. Robertson offered that driving in unfamiliar places caused her anxiety and that walking very far was a problem. In the forms she completed in September of 1992 on her daily living activities, Robertson said she washed small loads of laundry every day. Her washing machine and dryer are located in the basement. Her husband helps with the more strenuous housework like vacuuming and carrying the larger loads of laundry. Robertson reported that she goes shop-

ping nearly every day because she can carry only one sack of groceries. She plays golf with her husband on occasion. She also reported that she sometimes walks two miles in the morning and in the winter months sometimes walks three miles in the high school gym. She is able to carry her grandchildren but only with her left arm.

Robertson's husband testified that he believed his wife's testimony had been true and correct. The ALJ then asked him if he knew of any work that his wife could do. He answered: "Well, there's probably a lot of them. But it would be something where couldn't lift or—be hard to find, I would think." (Tr. 39). The ALJ followed up with a question whether he thought his wife could handle a job answering the telephone. He answered: "I'd think it would be all right. I don't know exactly how she feels, but I would think she could do something like that." (Tr. 39).

The final witness to testify at the hearing was Janice Hastert, a vocational rehabilitation consultant. The ALJ posed a hypothetical question that assumed certain uncontested facts and the following:

> [I]f I find further that this claimant has impairments that include a past history of injury to her right shoulder and difficulties with her back and neck—her arms and shoulders and considering her impairments, the claimant would be limited in her work activities—to work where she would not have to lift at a maximum—anything in excess of 20 pounds and perhaps at the most 10 pounds of lifting with any frequency—and if I should find further that the claimant would be precluded from doing jobs that would involve lifting overhead or reaching overhead because of her shoulder impairment and that, further, this claimant would need an opportunity to sit or stand

at her work activity, at least for a good bit of the work day. Given those limitations, what kind of jobs could such an individual do?

(Tr. 41–42). Ms. Hastert answered that possible jobs include doorkeeper, photocopy machine operation, and small bench assembly positions. Hastert also testified that a concentration problem or an attendance problem would prevent the person from performing competitive employment.

## MERITS

 Robertson first argues the ALJ failed to develop an adequate record on her anxiety problems. She principally contends that the ALJ erred in not following the special procedures for evaluating mental impairments, in not ordering a consultative psychiatric examination, and in not developing a sufficient record for evaluating the severity of this nonexertional limitation.

 "When a record 'contains evidence of a mental impairment that allegedly prevented claimant from working, the Secretary is required to follow the procedure for evaluating the potential mental impairment set forth in his regulations and to document the procedure accordingly. *See* 20 C.F.R. § 404.1520a'" *Andrade v. Secretary of Health and Human Services*, 985 F.2d 1045, 1048 (10th Cir.1993) (quoting *Hill v. Sullivan*, 924 F.2d 972, 975 (10th Cir.1991) (citing *See* 20 C.F.R. § 404.1520a)).[3] This procedure works in conjunction with the process used for evaluating physical impairments and ensures "that all evidence needed for the evaluation of a claim which involves a mental impairment is obtained and evaluated." *Hargis v. Sullivan*, 945 F.2d 1482, 1487 (10th Cir.1991).

The procedure requires first a careful review of the case record to determine if a

**3.** In a recent case, this court also enunciated the rule that "whenever an adult claimant alleges a mental impairment, 'a special procedure *must* be followed ... at each level of administrative review.' 20 C.F.R. §§ 404.1520a(a) and 416.920a(a)." *Tibbits v. Shalala*, 883 F.Supp. 1492, 1498 (D.Kan.1995); *see also Montgomery v. Shalala*, 30 F.3d 98, 99 (8th Cir.1994). There will be social security cases where a claimant alleges a mental impairment but the record is devoid of any evidence. *See, e.g., Sloan v. Shalala*, No. 93–6314, 1994 WL 325416, at *3–4, 1994

U.S.App. LEXIS 16925, at *10–*11 (10th Cir. July 7, 1994). Of course, the converse can also happen where the claimant does not allege a mental impairment yet the evidence suggests the possibility of one. Since the ALJ has a duty to develop an adequate record, the court believes the better rule is that the special procedure is triggered by evidence of a mental impairment. This case, as with most social security cases involving a mental impairment, has both allegations and evidence.

mental impairment exists. 20 C.F.R. § 404.1520a(b)(1). At this stage, the procedure requires the Secretary "to record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment contained in ... [the] case record." 20 C.F.R. § 404.1520a(b)(1). Upon finding a mental impairment, the Secretary must:

> determine the presence or absence of 'certain medical findings which have been found especially relevant to the ability to work,' sometimes referred to as the 'Part A' criteria. 20 C.F.R. § 404.1520a(b)(2). The Secretary must then evaluate the degree of functional loss resulting from the impairment, using the 'Part B' criteria. 20 C.F.R. § 404.1520a(b)(3).

*Cruse v. United States Department of Health and Human Services,* 49 F.3d 614, 617 (10th Cir.1995).

The Secretary must record her conclusions on a standard document. *Id.* "A standard document ... must be completed ... in each case at the initial, reconsideration, [and] administrative law judge hearing ... levels." 20 C.F.R. § 1520a(d). *See also Montgomery v. Shalala,* 30 F.3d 98, 99 (8th Cir.1994). This standard document is called a Psychiatric Review Technique Form (PRT form) that tracks the listing requirements and evaluates the claimant under the Part A and B criteria. *Cruse,* 49 F.3d at 617. "At the ALJ hearing level, the regulations allow the ALJ to complete the PRT form with or without the assistance of a medical advisor and require the ALJ to attach the form to his or her written decision." *Id.* (citing *Woody v. Secretary of Health and Human Services,* 859 F.2d 1156, 1159 (3d Cir.1988)).

Robertson alleges a mental impairment and the record contains evidence of one. Dr. Sosinski's notes are replete with references to Robertson's anxiety problem. In 1987, he observed a "large anxiety component" to her complaints. (Tr. 181). Robertson's principal

complaint at that time was chest pains, and Dr. Sosinski had noted that the chest pain and radiating pressure had interfered with her daily activities and her work. (Tr. 185). In 1987, Dr. Sosinski prescribed Xanax for her anxiety problem. The record shows that Robertson continues to take Xanax on as needed basis for anxiety attacks. (Tr. 112). In 1993, Dr. Sosinski said, "[s]he is a very anxious lady and has had some difficulty with anxiety over the years." (Tr. 200). In 1994, Robertson was admitted twice to the hospital on complaints of chest pain. The physicians noted "considerable anxiety" and assessed her condition as in part due to an anxiety disorder. The ALJ did not consider the 1994 hospital admissions in his decision, but this evidence was presented to the Appeals Council and is considered part of the administrative record. *See Jones,* 804 F.Supp. at 1404. At the reconsideration level, a psychiatric consultant, Arthur Hoyt, M.D., completed a PRT form showing that Robertson suffered from a mental impairment he diagnosed as a somatoform disorder but that the mental impairment was not severe.

The evidence here of Robertson's mental impairment is more than her own subjective testimony unsupported by any objective medical evidence. *See Howell v. Sullivan,* 950 F.2d 343, 348 (7th Cir.1991); *Shields v. Sullivan,* 801 F.Supp. 151, 158 (N.D.Ill.1992). Nor can the evidence of Robertson's mental impairment be ignored as "minimal references." *See Sloan v. Shalala,* No. 93–6314, 1994 WL 325416, at *4, 1994 U.S.App. LEXIS 16925, at *11 (10th Cir. July 7, 1994). The record plainly contains enough evidence of a mental impairment to trigger the special procedure for evaluating a mental impairment.

The ALJ did not complete and attach to his decision a PRT form. The ALJ did not ask a medical consultant to complete a PRT form. The ALJ's written decision does not substantially track the special procedure required for mental impairments.[4] Because

---

4. Indeed, the ALJ's discussion of Robertson's mental impairment consists mostly of citations to Dr. Sosinski's statements that Robertson's "anxiety had not been of major significance in regard to her ability to work" and that he saw "no evidence of a mental impairment or impairment in ability to reason, make occupational, personal or social adjustments." (Tr. 16). The ALJ cannot rely on the latter statement as conclusive proof that Robertson did not suffer from a mental impairment. Dr. Sosinski did not complete a PRT form, and the record does not show that he made this statement in contemplation of the governing social security regulations and procedures. Moreover, Dr. Sosinski's comment, when fairly read in context with the rest of his state-

the procedure was not followed, the court is unable to determine if substantial evidence supports the ALJ's decision. *See Anthis v. Shalala,* No. 92–1533–FGT, 1995 WL 311753, at *4, 1995 U.S.Dist. LEXIS 6851, at *10–*11 (D.Kan. Apr. 4, 1995). The court must remand the case for proper and full consideration of Robertson's mental impairment, singularly and in combination with her physical impairments. *See Hill v. Sullivan,* 924 F.2d 972, 975 (10th Cir.1991).

■■■■ Robertson argues the ALJ erred in not obtaining a consultative examination when the record has conflicting diagnoses of anxiety disorder and somatoform disorder. The pertinent inquiry is "whether the record contained sufficient medical evidence for the [Secretary] to make an informed decision as to [claimant's] alleged mental impairment," without the need for a consultative psychological examination. *Matthews v. Bowen,* 879 F.2d 422, 424 (8th Cir.1989); *accord Turner v. Califano,* 563 F.2d 669, 671 (5th Cir. 1977) ("To be very clear, 'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision."). In every social security case, the ALJ has a basic duty to see that an adequate record is developed on which to decide the issues raised. *Henrie v. United States Dept. of Health & Human Services,* 13 F.3d 359, 360–61 (10th Cir.1993). The ALJ's duty "is one of inquiry, ensuring that ... [he] is informed about 'facts relevant to his decision and learns the claimant's own version of those facts.'" *Id.* at 361 (quoting *Dixon v. Heckler,* 811 F.2d 506, 510 (10th Cir.1987)). This duty exists whether or not the claimant is represented by counsel. *Henrie,* 13 F.3d at 361.

The court believes there is a serious issue whether the ALJ can make an informed decision about Robertson's mental impairment without a consultative psychological examination. The medical records from Dr. Sosinski are incomplete with regards to his diagnosis and medical treatment of the anxiety disor-

der, and his recorded statements are really nothing more than bare conclusions. The evidence of record seems insufficient for drawing any reliable inferences about the frequency or severity of the anxiety attacks, the effectiveness of the prescribed medications, the impact of the anxiety problems on daily activities, the possibility of a somatoform disorder, and her alleged concentration problems. On remand, the court directs that a consultative psychological examination be conducted.

In light of the necessary remand, the court will discuss Robertson's other arguments in a cursory manner. On remand, the court expects the written decision will address the new evidence obtained through the consultative examination, as well as Dr. Wendt's treatment notes and the recent hospitalizations. Such evidence is relevant in considering the total limiting effect of plaintiff's different conditions, in assessing Robertson's mental impairment, and in evaluating the credibility of her pain testimony. In light of the new evidence, it may be necessary for the ALJ to obtain additional testimony from a vocational expert.

IT IS THEREFORE ORDERED that Robertson's motion for summary reversal or remand (Dk. 9) is denied in part and granted in part, and the Secretary's motion for an order affirming the Secretary's decision (Dk. 10) is denied.

IT IS FURTHER ORDERED that the Secretary's decision is reversed, and the case is remanded to the Secretary for additional proceedings consistent with this opinion.

---

ment and his other statements and treatment notes, should be interpreted as just an opinion going to the severity of a mental impairment. The ALJ did comment that no examining or treating physician had observed that Robertson's

"anxiety attacks would cause any significant difficulty in working." Since the ALJ did not follow the required procedure for evaluating mental impairments, this finding is not properly supported by the record.