**Linda FALK, Plaintiff,**

v.

**COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, Defendant.**

**No. 02–2294–DJW.**

United States District Court, D. Kansas.

Sept. 16, 2003.

Robert D. Linscott, Kansas City, MO, for Plaintiff.

David D. Zimmerman, Office of United States Attorney, Kansas City, KS, for Defendant.

## MEMORANDUM AND ORDER

WAXSE, United States Magistrate Judge.

Plaintiff Linda Falk brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the decision to deny her application for a period of disability and disability insurance benefits under Title II of the Social Security Act. According to Plaintiff, the Administrative Law Judge ("ALJ") presiding over the administrative hearing ignored his duty to develop the record in that he failed to order a consultative psychological examination of Plaintiff, he improperly discredited Plaintiff's subjective complaints, he inaccurately assessed Plaintiff's residual functional capacity and he failed to establish that Plaintiff could perform other jobs despite her limitations. As explained in more detail below, the Court rejects Plaintiff's first argument but is persuaded by Plaintiff's remaining arguments; thus, the ALJ's decision will be reversed and pursuant to 42 U.S.C. § 405(g), sentence four, this case will be remanded for an award of benefits.

### I. Procedural Background

On May 20, 1998, Plaintiff protectively filed her application for a period of disability and disability insurance benefits, claiming disability since November 1, 1997 [1] due to (1) a damaged heart valve; (2) problems with balance; and (3) fatigue. (Tr. 254–55, 272). The application was denied initially and upon reconsideration. (Tr. 258–69).

At Plaintiff's request, an administrative law judge ("ALJ") held a hearing on October 28, 1999, at which both Plaintiff and her counsel were present. (Tr. 13–28). On March 30, 2000, the ALJ rendered a decision denying all benefits, determining Plaintiff was not under a "disability" as defined by the Social Security Act. (Tr. 13–26). The Appeals Council denied Plaintiff's request for review on May 24, 2002, rendering the ALJ's decision the final decision of Defendant Commissioner of the Social Security Administration (Tr. 9–11).

### II. Standard of Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole, and whether Defendant applied the correct legal standards.[2] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] In the course of its review, the court may not reweigh the evidence or substitute its judgment for that of Defendant.[4]

### III. Relevant Framework for Analyzing Claim of Disability and ALJ Findings

"Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[5] The Social Security Act further provides that an individual "shall be determined to be under a disabili-

---

1. Plaintiff filed a prior application on April 21, 1995. (Tr. 30–33). This application was denied initially, upon reconsideration, and at the hearing level on October 17, 1996. (Tr. 224–235). The Appeals Council denied review on April 9, 1998. (Tr. 252). Plaintiff did not appeal that decision.

2. *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir.2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir.1994)).

3. *Id.*

4. *Id.* (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

5. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir.1988) (quoting 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (1982)).

ty only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[6]

To that end, the Social Security Administration has established a five-step sequential evaluation process[7] for determining whether a claimant is disabled. If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary.[8]

Step one of this five-step process seeks to determine whether the claimant presently is engaged in substantial gainful activity.[9] If she is, disability benefits are denied.[10] If she is not, the decision maker must proceed to the second step.[11] Here, the ALJ determined Plaintiff was not engaged in substantial gainful activity and, thus, properly proceeded to the second step. (Tr. 17).

The second step of the evaluation process involves a determination of whether "the claimant has a medically severe impairment or combination of impairments."[12] This determination is governed by certain "severity regulations," is based on medical factors alone, and thus does not include consideration of vocational factors as age, education, and work experience.[13] Pursuant to the severity regulations, the claimant must make a threshold showing that her medically determinable impairment or combination of impairments significantly limits her ability to do basic work activities.[14] If the claimant is unable to show that her impairments would have more than a minimal effect on her ability to do basic work activities, she is not eligible for disability benefits.[15] If, on the other hand, the claimant presents medical evidence and makes a minimal showing of medical severity, the decision maker proceeds to step three.[16] The ALJ in this case concluded Plaintiff had the following severe impairments as of her date last insured: mild aortic insufficiency; benign positional vertigo with occasional blurred vision; serous otitis (possibly the cause of her vertigo); chronic sinusitis; very mild degenerative disc disease at L3–4 and grade I spondylolisthesis at L5–S1; and mild degenerative disc disease at C6–7. (Tr. 18, 25).

In step three, the ALJ "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity."[17] If the impairment is listed, it is

---

6. *Id.* (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (1982 & Supp. III 1985)).

7. *Id.* (citing 20 C.F.R. §§ 404.1520, 416.920 (1986)).

8. *Id.*

9. *Id.*

10. *Id.*

11. *Id.*

12. *Id.* (quoting *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987)).

13. *Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c) (1986)).

14. *Id.* at 750–51 (citing 20 C.F.R. §§ 404.1521(b), 416.921(b) (1986)).

15. *Id.* at 751.

16. *Id.*

17. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d) (1986); *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987)).

conclusively presumed to be disabling and the claimant is entitled to benefits.[18] If not, the evaluation proceeds to the fourth step, where the claimant must show the impairment prevents her from performing work she has performed in the past.[19] If the claimant is able to perform her previous work, she is not disabled.[20] With respect to steps three and four, the ALJ determined that Plaintiff's impairments were not listed or medically equivalent to those listed in the relevant regulations and Plaintiff was unable to perform past relevant work.

Thus, the ALJ proceeded to the fifth and final step of the evaluation process: determining whether Plaintiff has the residual functional capacity (RFC) "to perform other work in the national economy in view of [her] age, education, and work experience."[21] At that point, the ALJ properly shifted the burden of proof to Defendant to establish that Plaintiff retains the capacity "to perform an alternative work activity and that this specific type of job exists in the national economy."[22]

It was at this final step that the ALJ concluded Plaintiff was not disabled, where he made findings that even though Plaintiff suffered from several impairments, she nonetheless could perform a significant number of jobs in the state and national economies, including document preparer, order clerk and parking lot cashier.

## IV. Analysis of Plaintiff's Specific Arguments

In her motion, Plaintiff contends the ALJ made four errors in reaching his decision: (1) he ignored his duty to develop the record in that he failed to obtain a consultative psychological examination; (2) he improperly discredited Plaintiff's subjective complaints; (3) he inaccurately assessed Plaintiff's residual functional capacity; and (4) he failed to establish that Plaintiff could perform other jobs despite her limitations. The Court will address each of these arguments in turn.

### A. Duty to Develop Record by Obtaining Consultative Psychological Examination

Plaintiff first argues the ALJ erred in failing to develop an adequate record in that the ALJ did not obtain a consultative psychological examination of Plaintiff when documents made part of the administrative record reflect brief references from medical providers that Plaintiff may suffer from depression and somatization disorder.

 To require further investigation, a claimant must raise the issue to be developed, showing that it is, on its face, substantial.[23] "Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists."[24] If the claimant does so, the ALJ must exercise "reasonable good judgment" to "fully and fairly develop[ ] the record as to material issues."[25] "This

18. *Id.*

19. *Id.*

20. *Id.*

21. *Id.* (quoting *Bowen v. Yuckert*, 107 S.Ct. at 2291).

22. *Id.* (citations omitted); *accord, White*, 287 F.3d at 905 (at fifth step, burden of proof shifts to Commissioner to show that claimant retains the functional capacity to do specific jobs).

23. *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir.1997) (quoting *Baca v. Dep't of Health and Human Servs.*, 5 F.3d 476, 479–80 (10th Cir.1993)).

24. *Id.*

25. *Id.* at 1168 (quotation omitted).

duty is especially strong in the case of an unrepresented claimant." [26]

■ Here, Plaintiff was represented by counsel in the October 1999 disability hearing. In reviewing the transcript from this hearing, the Court notes Plaintiff did not identify or otherwise refer to depression, somatization disorder or any other mental health issue as a cause of her disability. (Tr. 621–624). In her July 1998 application for benefits—submitted over a year before the hearing took place—Plaintiff again failed to identify or otherwise refer to depression, somatization disorder or any other mental health issue as a cause of her disability. (Tr. 272–277). In fact, when questioned in a September 1998 follow-up interview about whether she had a mental condition that caused her a disability or that she regarded as a disabling factor, Plaintiff states that although "she gets depressed on occasion, this is due to her disability and she does not regard her depression as disabling." (Tr. 296). Plaintiff further states in this interview that she took no medication for depression, and she had not seen any physician or counselor with regard to her mental health in several years. (Tr. 296).

Plaintiff failed to raise the issue of her mental health as a possible cause of her alleged disability in her written application for disability benefits, failed to raise the issue of her mental health as a possible cause of her alleged disability in a telephone follow-up interview and failed to raise the issue of her mental health as a possible cause of her alleged disability in her disability hearing, at which she was represented by counsel. Plaintiff, however, now argues treatment notations made part of the administrative record below,

which reflect brief references from medical providers that Plaintiff may suffer from depression, anxiety and/or somatization disorder, should have been a "red flag" to the ALJ that a consultative psychological examination of Plaintiff was necessary.[27] The Court is not persuaded by Plaintiff's argument.

As a preliminary matter, one of the treatment notations to which Plaintiff refers reflects Plaintiff told the medical provider—Dr. Graner—that her alleged depression resulted from her physical impairments (Tr. 455). This statement is consistent with Plaintiff's response in a September 1998 follow-up disability interview conducted over two years later, wherein Plaintiff maintains that although "she gets depressed on occasion, [but] this is due to her disability and she does not regard her depression as disabling." (Tr. 296). Although Dr. Graner suggested Plaintiff see a psychiatrist to prevent further unnecessary testing with regard to Plaintiff's physical ailments, nothing in the record indicates Plaintiff actually did or felt the need to follow through on this suggestion. (Tr. 455).

■ Although the ALJ bears responsibility for ensuring an adequate record is developed during the disability hearing consistent with the issues raised, there is no duty on the part of the ALJ to develop the record with regard to issues that the Plaintiff herself has never raised and repeatedly denies exist. The burden is on Plaintiff to prove disability prior to the expiration of her insured status.[28] When she makes no formal contention of mental or emotional impairment, isolated treatment notations about the claimant's mental health such as the ones here are not sufficient to raise suspicion of a mental health disorder.[29]

**26.** *Carter v. Chater,* 73 F.3d 1019, 1021 (10th Cir.1996).

**27.** Plaintiff's Brief at p.23 (doc. 20).

**28.** *Henrie v. Dep't of Health and Human Servs.,* 13 F.3d 359, 360 (10th Cir.1993).

**29.** *See Stephens v. Shalala,* 50 F.3d 538, 540–41 (8th Cir.1995) (where claimant did not

For these reasons, the Court finds the record contains sufficient medical evidence for the ALJ to make an informed decision as to the claimant's alleged mental impairment[30] and the ALJ did not err by failing to supplement the record with a consultative psychological examination of Plaintiff.

## B. Credibility Determinations

Plaintiff next asserts the ALJ improperly discredited Plaintiff's subjective complaints. In rejecting Plaintiff's subjective complaints of disabling pain and other limitations, the ALJ completely dismissed an assessment of Plaintiff's physical capacity made by Plaintiff's treating physician. Thus, before reviewing the ALJ's reasons for rejecting Plaintiff's testimony, the Court first will address the ALJ's credibility determination regarding Plaintiff's treating physician.

### 1. Plaintiff's Treating Physician

On September 27, 1999, Pitt Vesom, M.D., Plaintiff's treating physician, completed an assessment of Plaintiff's physical capacities (Tr. 478–482). Dr. Vesom indicates Plaintiff's lifting and carrying is restricted to 10 pounds occasionally; that she is unable to sit, stand and walk for an eight-hour workday; she is limited to occasional grasping and fine manipulation of the hand bilaterally and occasional use of the feet; she can never climb, balance, crawl or push/pull; she is limited to occasional stooping, crouching, kneeling, reaching, handling, feeling, hearing and speaking; and that even occasional rotation of her head would cause nausea, dizziness and lightheadedness. The ALJ rejected Dr. Vesom's assessment of Plaintiff's physical limitations, stating the assessment was unsupported and inconsistent with objective or clinical findings.

■ "An ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record."[31] A treating physician's opinion is considered in relation to factors such as its consistency with other evidence, the length and nature of the treatment relationship, the frequency of examination, and the extent to which the opinion is supported by objective medical evidence.[32] If the ALJ rejects the treating physician's opinion, he must state specific, legitimate reasons for doing so.[33] Here, the Court finds the ALJ failed to provide such reasons.

■ Dr. Vesom's assessment was completed on a form that asked for both functional limitations and medical findings that support each particular limitation or set of limitations. On the form, Dr. Vesom indicates what he concludes are Plaintiff's limitations and notes medical findings of "seronegative osteoarthritis" and "chronic vestibulitis" to support his conclusions. As noted above, the ALJ rejects this assessment because, in the ALJ's opinion, it is not supported by any objective medical evidence or clinical findings.

The Court's review of the record indicates otherwise. Plaintiff's medical records contain numerous findings supporting Dr. Vesom's assertion:

- 10/04/95: Diagnosis of inflammatory arthritis (Tr. 118);

---

30. *See Robertson v. Chater,* 900 F.Supp. 1520, 1530 (D.Kan.1995).

allege a disabling mental disorder in his application for benefits, no duty for ALJ to develop record in this regard); *Pierre v. Sullivan,* 884 F.2d 799, 802 (5th Cir.1989) (same).

31. *McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir.2002) (quotation omitted).

32. 20 C.F.R. § 404.1527(d)(1)-(6).

33. *Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir.2001) (quotation omitted).

- 03/21/95: Diagnosis of seronegative inflammatory arthritis (Tr. 199–120);
- 04/20/95: Diagnosis of seronegative inflammatory arthritis (Tr. 125);
- 03/07/96: Plaintiff assessed with chronic balance problems (Tr. 450, 473);
- 04/02/97: Plaintiff assessed with vertigo (Tr. 355);
- 11/05/97: Diagnosis of ataxia (Tr. 353);
- 11/20/97: Diagnosis of probable benign positional vertigo (Tr. 317);
- 02/27/98: Diagnosis of benign positional vertigo confirmed by ENG. (Tr. 319);
- 04/26/99: Diagnosis of otitis media; vertiginous vertigo, seronegative arthritis (Tr. 406);
- 07/25/99: Diagnosis of acute labyrinthitis, seronegative osteoarthritis (Tr. 407); and
- 03/20/00: Diagnosis of vertigo (Tr. 612).

None of the medical findings Dr. Vesom notes in his RFC assessment are, as the ALJ claimed, inconsistent with the medical record as a whole. Accordingly, the ALJ's reason for rejecting Dr. Vesom's assessment—upon which he relied to reject Plaintiff's allegations of disabling pain and other limitations—is not substantiated in the record.

### 2. *Plaintiff*

The ALJ concludes Plaintiff's subjective complaints are not credible because her allegations are not supported by objective medical evidence; her daily activities are inconsistent with her allegations; her husband's testimony is less than fully credible; and she has a sporadic work history.

 The Tenth Circuit has set forth the following factors for analyzing subjective complaints of disabling conditions: (1) whether claimant proves with objective medical evidence an impairment that causes the subjective condition; (2) whether a loose nexus exists between the impairment and the subjective condition; and (3) whether the subjective condition is disabling based on all objective and subjective evidence.[34] In other words, if Plaintiff establishes that some kind of medical basis exists for the pain and/or symptoms she alleges, the ALJ must consider Plaintiff's assertions regarding subjective pain and resulting limitations and decide whether he believes them.[35]

In his decision, the ALJ found the medical evidence established Plaintiff suffered from, among other impairments, benign positional vertigo with occasional blurred vision and serous otitis, which was possibly the cause of her vertigo. Plaintiff testified in the administrative hearing that she often was unable to keep her balance when standing or walking (Tr. 634) and that she consistently experiences dizziness and nauseousness. (Tr. 635). Because a medical basis existed for the pain and/or symptoms Plaintiff alleges, the ALJ moved directly to the third factor for analyzing subjective complaints of disabling conditions: whether the subjective condition to which Plaintiff testified is disabling based on all objective and subjective evidence presented. The ALJ ultimately found Plaintiff's testimony was not believable in this regard, and Plaintiff now challenges this finding.

 In making a decision regarding credibility, the ALJ must consider such factors as the levels of medication, their effectiveness and any associated side effects, the extent to which Plaintiff attempts to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the

---

34. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994); *Luna v. Bowen*, 834 F.2d 161, 163–64 (10th Cir.1987).

35. *Luna*, 834 F.2d at 163.

ALJ, the motivation of and relationship between the claimant and other witnesses; and the consistency of nonmedical testimony with objective medical evidence.[36]

 The court should "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." [37] Credibility is the province of the ALJ.[38] At the same time, however, the ALJ must explain why specific evidence relevant to each factor supports a conclusion that a claimant's subjective complaints are not credible.[39] Credibility findings should be closely linked to substantial evidence and not just a conclusion in the guise of findings.[40]

### a. Consistency of Nonmedical Testimony With Objective Medical Evidence

 With regard to this factor, the ALJ found Plaintiff's description of her physical limitations was not supported by objective medical evidence. Plaintiff testified in the administrative hearing that she often was unable to keep her balance when standing or walking (Tr. 634) and that she consistently experiences dizziness and nauseousness. (Tr. 635). Plaintiff also stated she is continually tired and experiences some level of fatigue every day. (Tr. 643). Plaintiff related these symptoms escalate in the afternoon, and she is required to lie down and hold her head perfectly still in order to obtain relief. (Tr. 635–636). The symptoms often are very bad first thing in the morning as well, at which time she stays in bed and holds her head completely still. Plaintiff testified the combination of her balance problems, her dizziness and her fatigue make it difficult to see or think clearly. (Tr. 638).

In finding that Plaintiff's description of her physical limitations was not supported by objective medical evidence, the ALJ referenced the following objective findings in the record: (a) Plaintiff's vision is corrected to 20/40 and she has a full visual field; (b) there is only mild spinal degenerative disc disease and physical examinations showed full range of motion with only mild difficulties with orthopedic maneuvers; and (c) there is a lack of significant restrictions placed by medical providers on Plaintiff's activities.

Conspicuously missing from the ALJ's analysis, however, is the following medical evidence supporting Plaintiff's subjective complaints of imbalance and dizziness:

- 03/07/96: Plaintiff assessed with chronic balance problems (Tr. 450, 473);
- 04/02/97: Plaintiff assessed with vertigo (Tr. 355);
- 11/05/97: Diagnosis of ataxia (Tr. 353);
- 11/20/97: Diagnosis of probable benign positional vertigo (Tr. 317);
- 02/27/98: Diagnosis of benign positional vertigo confirmed by ENG. (Tr. 319).
- 04/26/99: Diagnosis of otitis media; vertiginous vertigo (Tr. 406);
- 07/25/99: Diagnosis of acute labyrinthitis, Meniere's Syndrome (Tr. 407);
- 09/27/99: Assessment by Dr. Vesom, Plaintiff's treating physician, that Plaintiff could not perform a job that required she turn her head from side to side or up and down on an occasional basis because it would cause her nausea,

---

**36.** *Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir.1988).

**37.** *Casias v. Sec'y of HHS,* 933 F.2d 799, 801 (10th Cir.1991).

**38.** *Hamilton v. Sec'y of HHS,* 961 F.2d 1495, 1499 (10th Cir.1992).

**39.** *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir.1995); *but, see, Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir.2000) (*Kepler* does not require formalistic factor-by-factor recitation).

**40.** *Kepler,* 68 F.3d at 391 (quoting *Huston,* 838 F.2d at 1133) (footnote omitted).

dizziness and lightheadedness. (Tr. 478–482)[41]; and

• 03/20/00: Diagnosis of vertigo (Tr. 612).

Based on these supporting medical records, the Court hereby rejects the ALJ's conclusion that Plaintiff's description of her physical limitations is not supported by objective medical evidence of record.

### b. Nature of Daily Activities

■ Plaintiff testified that her driving is very limited; she drives only short distances when she has to, which is four to five non-highway miles per day to transport her son to and from school. (Tr. 639). Plaintiff testified that reading is very difficult because her vision is deficient and her glasses make her sick to her stomach and dizzy. (Tr. 641). Plaintiff states she does read the local newspaper and her son's school work, but only for ten to fifteen minutes at a time before she has to take a break. (Tr. 642). Plaintiff testified she watches television in the evening, but must lie down with one eye shut when she watches due to pain above her right eye. (Tr. 643).

Regarding general daily activities, Plaintiff testified she does not grocery shop but occasionally will purchase a needed item at a convenience store. (Tr. 645). Plaintiff testified she does not cook or do any housecleaning, but occasionally will place meat in a crock pot in the morning for dinner (Tr. 646) or do a small load of laundry if her children do not have clean uniforms to wear to school (Tr. 644). Finally, Plaintiff testified that she attends church approximately two to three times per month but sometimes is required to go to the basement of the church and listen to the service over an intercom so that she can lie down. (Tr. 646).

■ The ALJ found Plaintiff's testimony regarding her daily activities are inconsistent with her alleged disabling symptoms, including dizziness and/or vertigo, and thus used this testimony as a factor in finding Plaintiff's testimony unbelievable. The Court disagrees. As a preliminary matter, the Court finds the minimal daily activities about which Plaintiff testified are consistent with her alleged disabling symptoms. "[T]he ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain."[42] Thus, the ALJ's credibility determination in this regard cannot stand.

### c. Motivation of and Relationship between Claimant and Witnesses

■ The ALJ found the testimony of Plaintiff's husband less than fully credible because he was not a competent medical source and because he had a financial outcome in the proceedings. Without considering whether financial gain may be used as a factor to discount witness credibility, the Court concludes Plaintiff's husband need not be a medical source before his testimony about Plaintiff's daily activities and perceived limitations may be considered credible. Moreover, the Court rejects the ALJ's conclusion that the description by Plaintiff's husband of Plaintiff's physical limitations is not supported by objective medical evidence of record.

■ Given these findings, the sole basis for the ALJ's decision regarding the credibility of Plaintiff's husband is his financial interest in seeing Plaintiff awarded benefits. The Court finds this basis standing on its own is insufficient to discredit the credibility of Plaintiff's husband.[43]

---

**41.** *See, infra,* Section IV(B)(1) (rejecting the ALJ's determination that Dr. Vesom's assessment was not supported by medical evidence).

**42.** *Thompson v. Sullivan,* 987 F.2d 1482, 1490 (10th Cir.1993) (citation omitted).

**43.** *Ramirez v. Barnhart,* 292 F.3d 576, 581 n. 4 (8th Cir.2002) (finding that all disability

### d. Work History

 The ALJ found Plaintiff's past work history was sporadic, with many years reflecting low earnings. Based on this information, the ALJ suggested in his decision that Plaintiff has never been highly motivated to work, even before her alleged disability onset date. Thus, the ALJ concluded Plaintiff's past work history undermined her credibility.

Upon review of the earnings record to which the ALJ refers, the Court notes that during the twenty-five year window from 1970 to 1995, Plaintiff had only one year (1990) with no reported earnings. (Tr. 379). Given this information, the Court finds the ALJ's description of Plaintiff's work history as sporadic to be inaccurate and any credibility findings based thereon to be error.

### C. Assessment of Plaintiff's Residual Functional Capacity

Plaintiff contends the ALJ inaccurately assessed Plaintiff's residual functional capacity. Residual functional capacity ("RFC") is an administrative finding of what an individual can still do despite her or her limitations.[44] It assesses the extent to which an individual's "impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [an individual] can do in a work setting." [45]

 An ALJ must provide a "narrative discussion describing how the evidence supports" his or her conclusion regarding RFC.[46] The ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.[47] The ALJ also must explain how any material inconsistencies or ambiguities in the case record were considered and resolved.[48] The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.

Plaintiff contends the ALJ erred in failing to adequately support the RFC determination with specific evidence in the record. In his decision, the ALJ concluded Plaintiff had the following residual functional capacity: she could do no prolonged walking; she could do no frequent climbing, bending, stooping, squatting, crouching, crawling or kneeling; she could not engage in work activity requiring repeated flexion, extension or rotation of the neck; she could not engage in work activity at unprotected heights, around hazardous equipment or machinery, or requiring driving; and she could not engage in work activity requiring reading for more than fifteen minutes at a time or more than two hours total in an eight hour workday.

 Although the ALJ included within Plaintiff's RFC a restriction upon repeated rotation of Plaintiff's head during the workday, the ALJ chose not to include in Plaintiff's RFS a restriction upon *any* rotation of Plaintiff's head during the workday—a restriction imposed by Plaintiff's treating physician but rejected by the ALJ as implausible and unsupported by the

---

claimants are financially motivated to some extent and thus this fact cannot, in and of itself, be dispositive on issues of credibility).

**44.** 20 C.F.R. § 404.1545(a).

**45.** *Id.*

**46.** Soc. Sec. Ruling (SSR) 96–8p, 1996 WL 374184 at *7 (1996).

**47.** *Id.*

**48.** *Id.*

medical evidence. The Court already has made a finding that the assessment provided by Plaintiff's treating physician is supported by the medical evidence and credible; accordingly, the Court finds the ALJ erred when he failed to include such a restriction in Plaintiff's RFC. The Commissioner, however, urges the Court to reject Dr. Vesom's RFC assessment for purposes of Plaintiff's claim not based on lack of Dr. Vesom's credibility, but because the assessment was completed approximately eighteen months after Plaintiff's insured status expired.

■ The Court acknowledges that Dr. Vesom's assessment of Plaintiff's physical abilities relates to a time period approximately eighteen months after Plaintiff's insured status expired. The Court finds, however, that Dr. Vesom's opinion is nonetheless highly relevant in that it bears upon the severity of Plaintiff's impairment during the relevant time period. This general principle finds support in Tenth Circuit precedent [49] and is especially significant in circumstances such as the one presented here, where independent medical evidence of a disabling impairment during the relevant time period also exists. The Court finds the RFC determination made by the ALJ is not adequately supported by the record.

### D. Burden of Proving Plaintiff Can Perform Other Jobs in the National Economy

Plaintiff's final argument is that the ALJ's hypothetical question eliciting the vocational expert's (VE) testimony—that there are jobs existing in the national economy that Plaintiff remains capable of performing—failed to include all of Plaintiff's limitations and, thus, the VE's testimony fails to constitute substantial evidence supporting the denial of benefits.

■ A vocational expert's testimony can provide a proper basis for an ALJ's determination where the claimant's impairments are adequately reflected in the hypothetical inquiries to the expert.[50] According to Plaintiff, however, the ALJ's hypothetical questions omitted several of Plaintiff's significant limitations, including Plaintiff's inability to even occasionally rotate her head during an eight-hour workday. For the reasons stated in section IV(B)(1) above, the Court finds the ALJ erred when he failed to include the limitations identified by Dr. Vesom when determining whether Plaintiff could perform other jobs in the national economy.

The vocational expert who testified at the hearing stated that if Plaintiff was unable to turn or rotate her neck more than one-third of her work time during a given day of work, Plaintiff would be incapable of working in her previous jobs or in any job in the national economy. As explained above, substantial evidence in the record supports such a hypothetical. An ALJ "may not ask a vocational expert a hypothetical question based on substantial evidence and then ignore unfavorable answers." [51]

■ The Court need not consider Plaintiff's other arguments. Because the

**49.** *See Baca v. Dep't of Health & Human Servs.,* 5 F.3d 476, 479 (10th Cir.1993) ("[E]vidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date.").

**50.** *Gay v. Sullivan,* 986 F.2d 1336, 1341 (10th Cir.1993).

**51.** *Campbell v. Bowen,* 822 F.2d 1518, 1523 n. 6 (10th Cir.1987).

**1220**

vocational expert testified that Plaintiff could not perform her past work or any other work in the national economy given Dr. Vesom's restrictions, and Dr. Vesom's restrictions were improperly discounted, the ALJ should have awarded Plaintiff benefits. Where the evidence has been fully developed and points to a particular finding, the Court may reverse and remand for an immediate award of benefits.[52] Here, the evidence has been fully developed and indicates that Plaintiff should have been awarded benefits.

Accordingly, it is hereby ORDERED that the Commissioner's decision is reversed. Pursuant to 42 U.S.C. § 405(g), sentence four, the case is remanded for an award of benefits and upon remand, this case shall be closed.

IT IS SO ORDERED.

---

**52.** *Gatson v. Bowen*, 838 F.2d 442, 450 (10th Cir.1988); *Biri v. Apfel*, 4 F.Supp.2d 1276, 1279–80 (D.Kan.1998).